KEETON *v*. STATE.

(Division A. May 19, 1923.)

[96 South. 179. No. 23075.]

CRIMINAL LAW. *Law contemplates that jury shall be composed of unbiased men, unsusceptible to popular demand for defendant's conviction.*

In order for a defendant to be entitled to a change of venue under section 1484, Code 1906 (section 1242, Hemingway's Code), it is not necessary that it shall appear that every otherwise qualified juror in the county where the offense is charged to have been committed has prejudged the defendant's case or bears a grudge or ill will against him, and the defendant should not be denied a change of venue, although it may appear that twelve unbiased men may be found in the county to try him. The statute contemplates that the jury shall not only be composed of unbiased and impartial men, but of men who have not been and will not during the trial be subject to the' influence of a popular demand for the defendant's conviction.

APPEAL from circuit court of Jones county.

HON. R. S. HALL, Judge.

Earl Keeton was convicted of rape, and he appeals. Reversed and remanded.

*Marion W. Reily,* for appellant.

The appellant made a motion for a change of venue and supported it by two affidavits as required by the statute. Thereupon the state attempted to introduce testimony to overcome *prima-facie* case made by the motion and affidavits. The state introduced fourteen witnesses. Six of them were officers of the county. Nine of them had attended court when Holifield or Davis was tried. Practically every one of them admitted that they had heard that a mob had gathered about the jail for two nights after the occurrence for the purpose of hanging the appellant and those jointly indicted with him. Practically every one had heard that these men had been slipped out of the county to avoid mob violence. Each one of them testified that he thought a fair trial could be obtained in Jones county basing his statements upon his confidence in the citizenship of the county.

The appellant introduced sixteen witnesses after the state had offered testimony upon the motion for a change of venue.

When a man is guilty of an offense, except in rare instance, he does not want his case transferred from the county of his residence. He wants to be tried at home where he may succeed in getting some advantage from the presence of his family and friends. It frequently occurs that the very enormity of the crime causes us to jump to the conclusion that he who is charged with it is guilty of it. The next step is to decide in our own minds that he who is accused should be punished. Then we remember how frequently the guilty go unpunished and if we are not attorneys we decide that the fact that the guilty

go unpunished is due to the technicalitites of the law—
such as demurrers and changes of venue and the like. Be-
ing in this mental attitude, as good citizens, we go forth
to exercise our influence to see that a speedy trial is
had and the guilty punished. When an applicattion for
a change of venue is made we imagine that the accused
is fleeing from a trial; that he is guilty and we know
it and that the accused knows it; we say to ourselves he
can get as fair a trial here as he deserves; we want him
tried here where we can see that he does not escape. Then
it is, if the court please, that men who would suffer their
right arms to be amputated rather than swear falsely
about what actually occurred in their presence, will take
the stand and swear that a man can get a fair trial just
because they think that he ought to be convicted. They
fail to distinguish between their judgment and their
wishes. The more prejudice that exists against a man
and the more he is believed to be guilty, the more difficult
it is to find some one who will swear that he is entitled
to a change of venue. Hundreds of people gathered at
the jail the night after the alleged offense and surely had
not the county attorney and Mr. Pack and others made
speeches and promised speedy trial, the jail would have
been stormed. Twenty guards were employed to guard
the jail. Men were there from every section of the county.
The following night another mob assembled and notwith-
standing the pleadings of the jailor, searched the jail.
Almost every witness who testified upon the motion tes-
tified to threats to hang the accused. Some said that
if the court did not hang them that the crowd would.
This is a peculiar case in that the trial of Holifield was
in fact a trial of the appellant as was the trial of Davis.
The witnesses were the same; the facts the same;—the
result the same. How could the trial judge ever hope to
obtain a fair jury to try Keeton when he knew that the
appellant was being tried after Holifield and Davis had
been tried for the same offense? This court has frequent-

ly held that the fact that the testimony is to the effect that a fair jury can be obtained but that this testimony is given because of the confidence of the witness in the citizenship of the county, will not warrant the court in denying a motion for a change of venue. *Anderson* v. *State,* 92 Miss. 656, 46 So. 65; *Eddins* v. *State,* 70 So. 898; 110 Miss. 708; *Brown* v. *State.* 36 So. 73; *Tennison* v. *State,* 79 Miss. 708; *Magneice* v. *State,* 60 So. 8, 103 Miss. 30. I submit in all confidence that when this case is viewed as a whole, this court cannot but understand that appellant did not receive a fair trial because of the prejudice in the county against him.

*H. C. Holden,* Assistant Attorney-General, for the State.

The appellant contends that the court erred in refusing to grant a change of venue. In *Cheatham's case,* 67 Miss. 339, 7 So. 205, the rule is announced: "If the trial as surveyed from its conclusion instead of its commencement," shows that it was "entirely free from any bias against appellant," a motion for a change of venue was properly overruled. In *Tennison* v. *State,* 79 Miss. 708, 31 So. 421, this court held that there is no well-defined rule of law applicable to the question of venue, but that each particular case must be decided upon its own peculiar facts and circumstances. In *Bond* v. *State,* 91 So. 461, this court followed and adopted the two prior decisions just mentioned. The passion and indignation of the people is swift to arise when some detestable crime is committed or reported, but it is just as quick to subside once the alleged perpetrator of the crime is removed to safety and it is realized that he will be given a speedy trial. Under such conditions mobs fade away like mists before the morning sun. Cool reason is restored by the passage of time and the return to normal functioning of temporarily disarranged minds. This was true in Laurel. The three accused men were eventually tried by a fair

and impartial jury in an orderly and dignified manner. The regular impaneling of the jury shows that twelve fair and impartial jurors were obtained. The defendant succeeded in producing twenty witnesses who testified in his behalf, several of whom were residents of Laurel or vicinity. The verdict of the jury, imposing a life sentence, shows conclusively that if there was any widespread bias or prejudice against the defendant it had disappeared when the trial took place, otherwise the verdict would have been guilty as charged and a consequent sentence of death. Viewing the record as a whole, it is clear that the court committed no error in overruling the motion for a change of venue.

Argued orally by *Marion W. Reily* and *B. F. Carter* for appellant and *H. C. Holden,* assistant Attorney General, for the state.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a conviction for rape alleged to have been committed, in the Second judicial district of Jones county, and the assignment of error on which a decision must turn is that the court below erred in not granting the appellant a change of venue. The appellant and two others, Hollifield and Davis, were jointly indicted for rape, separately tried, and each convicted. The evidence of the appellant's alleged victim, if true, is of such character as to inflame the mind and make it exceedingly difficult for the average person to try the case calmly and dispassionately.

The appellant's defense and that of his two companions on their trials was that the woman consented. The woman reported that she had been raped shortly after she claims that it occurred, and the appellant, Hollifield, and Davis were arrested, placed in jail, and shortly thereafter a crowd assembled there with the intention of mobbing them, but were dissuaded therefrom by the county attorney and

others by the promise that they would be speedily tried at a term of court which would be held in a few days thereafter. The prosecutrix claims to have been raped on July 5, 1922, the indictment was returned on July 18th, and the appellant was tried on August 1st; Hollifield and Davis having been in the meantime tried and convicted.

A number of witnesses were examined on the motion for a change of venue from whose evidence it is clear that the charge against the appellant, Hollifield, and Davis was known throughout the judicial district and caused considerable excitement, and that the consensus of opinion therein was that they are guilty and should be punished therefor. A number of witnesses did testify that in their opinion a sufficient number of unbiased jurors could be found in the district to insure the appellant a fair and impartial trial, and others that the character of the people of the district was such as to insure the appellant a fair trial therein. The sheriff probably made an accurate estimate of the situation by stating that:

"I think we can get twelve men that will give them a fair trial, but it will take a lot of trying."

Each of the trials was attended by an excited crown which packed the courthouse to its capacity and at the Hollifield trial evidenced its interest therein by its conduct. What the conduct of the crowd at the appellant's trial was, does not appear.

Section 1484, Code of 1906 (section 1242, Hemingway's Code), provides:

When "by reason of prejudgment of the case, or grudge or ill will to the defendant in the public mind, he cannot have a fair and impartial trial in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a convenient county, upon such terms, as to the costs in the case, as may be proper."

Under this section it is not necessary, in order for a de-

132 Miss.—47.

fendant to be entitled to a change of venue, that it shall appear that every otherwise qualified juror in the county where the offense is charged to have been committed has prejudged the defendant's case or bears a grudge or ill will against him, and the defendant should not be denied a change of venue, although it may appear that twelve unbiased men may be found in the county to try him. The statute contemplates that the jury shall not only be composed of unbiased and impartial men, but of men who have not been and will not during the trial be sub-ject to the influence of a popular demand for the defend-ant's conviction. If such a demand is widespread before the trial and is evidenced by the conduct of a large crowd at the trial, it can be safely assumed that the jury will not be uninfluenced thereby. *Tennison* v. *State,* 79 Miss. 708, 31 So. 421; *Brown* v. *State,* 83 Miss. 645, 36 So. 73; *Magness* v. *State,* 103 Miss. 30, 60 So. 8; *Eddins* v. *State,* 110 Miss. 780, 70 So. 898.

"The defendant is entitled to be tried in a county where a fair proportion of the people qualified for jury service may be used as a venire from which a jury may be secured to try his case fairly and impartially, and uninfluenced by a preponderant sentiment that he should be convicted. *Magness* v. *State, supra.*

Consequently testimony warranting a change of venue in a criminal case is not overcome by a showing that twelve impartial jurors could be found in the county by picking them, or by testimony predicated wholly of the general good character of the people of the county.

This is not a case where the defendant's guilt is beyond doubt, for there is ample evidence to support a verdict to the contrary, but he had very little chance for an unbiased and impartial consideration thereof by a jury fresh from contact with, and surrounded at the trial by, an angry and excited people clamoring for his life or liberty. More-over, the guilt or innocence of the defendant is not a ques-tion here for consideration, for:

"It is one of the crowning glories of our law that, no matter how guilty one may be, no matter how atrocious his crime, nor how certain his doom, when brought to trial anywhere, he shall nevertheless have the same fair and impartial trial accorded to the most innocent defendant. Those safeguards, crystallized into the Constitution and laws of the land as the result of the wisdom of centuries of experience, must be by the courts sacredly upheld, as well in case of the guiltiest as of the most innocent defendant answering at the bar of his country. And it ought to be a reflection, always potent in the public mind, that, where the crime is atrocious, condemnation is sure, and when all these safeguards are accorded the defendant, and therefore, the more atrocious the crime, the less need is there for any infringement of these safeguards." *Tennison* v. *State, supra.*

*Reversed and remanded.*