# SHELTON $v.$ STATE.

(Division A.   Feb. 24, 1930.)

[126 So. 390.   No. 28435.]

**Thames & Thames**, of Vicksburg, for appellant.

**Forrest B. Jackson**, Assistant Attorney-General, for the state.

Argued orally by **Jas. D. Thames**, for appellant, and by **Forrest B. Jackson**, for appellee.

**Cook, J.**, delivered the opinion of the court.

At the June, 1928, term of circuit court of Claiborne county, the appellant, Allen Shelton, and Ruice Stevens were indicted for the murder of Mrs. Mattie Dungan. A severance was granted, and Ruice Stevens was tried, convicted, and sentenced to the penitentiary for life. At the June, 1929, term of the court, Allen Shelton, the appellant, was tried and convicted of the murder, and was also sentenced to life imprisonment in the state penitentiary; and from this conviction and sentence, he prosecuted this appeal.

The facts upon which this conviction is based are substantially as follows: About nine o'clock in the morning of January 21, 1928, a neighbor of Mr. and Mrs. Dungan, who were old and had been ill for some days prior

to the murder, called at their home, and upon receiving no response to his knock at the door, looked through the window and discovered the dead body of Mr. Dungan lying before the fireplace, and the body of Mrs. Dungan lying near the door of the adjoining room. Both had been killed by gunshots, and blood was spattered over the floor and walls of the room in which the dead bodies were found. There were several pools of blood in various parts of the rooms, and especially near and under the bodies. There was a pool of blood on the front porch, and there were shoe tracks, and also the track of a bare foot, through the blood and thence over the rooms. Mr. Dungan was dressed in his shirt and trousers and a pair of overalls, one strap thereof being over his shoulder and the other down. Mrs. Dungan was dressed in her night clothes, with only one stocking on. The dresser drawers and the trunks had been opened and ransacked, and papers and wearing apparel were scattered over the floors, and a plank had been removed from the ceiling over the front door in the north room. Mr. Dungan's shotgun was lying near his body, and two empty Ajax shells were found therein, but the testimony was to the effect that an examination of this gun's barrels disclosed that it had not been recently fired. An empty Ajax shell was also found in the yard. A fire was smoldering in the fireplace before which Mr. Dungan was lying.

The alarm was promptly given, and the sheriff of the county and many citizens gathered at the Dungan home and made all possible investigations as to the circumstances of the death of these parties. Bloodhounds were secured, but nothing was accomplished by them. A detective was promptly employed, and within a day or two Ruice Stevens, a relative of the deceased, Hobson Stevens, a grandson of the deceased, and the appellant and another party were arrested and placed in jail, and charged with the murder. The officers examined these parties fully in regard to their movements on the night

of the murder, but since their statements did not tend to connect any of them with the murder, they were shortly thereafter released from custody. Another detective was engaged, and, after several months' investigation by him, Ruice Stevens, Hobson Stevens, and the appellant were again arrested and placed in jail. A few days thereafter, Hobson Stevens was released from custody.

All the testimony offered by the state, which tended directly to connect the appellant and Ruice Stevens with the murder, was given by the said Hobson Stevens and Josie Lillis, a young woman who lived in the home of Mrs. Jessie Mae Stevens, daughter of the deceased and mother of Hobson Stevens.

The said witness, Hobson Stevens, testified that he, Ruice Stevens, and the appellant, Allen Shelton, left the home of his mother in Vicksburg about three o'clock in the afternoon of January 20, 1928, to go into the Mississippi River Swamp on a hunting trip; that they traveled in a Ford touring car, and carried two dogs; that Ruice Stevens had a Winchester shotgun and carried Ajax and Shur-Shot shells; that they went south on the highway leading into Claiborne county for about nine or ten miles and turned into a settlement road leading into the swamp; that after some delay and difficulties on account of the muddy condition of this road, they reached a point near the river and left their automobile at an old settlement, and hunted down the river about four miles, thence east about two miles, and thence north to their automobile; that they got back to the automobile about ten o'clock p. m., and there built a fire and warmed themselves, and after eating a lunch started back to the main highway; that after some delay, on account of their automobile getting stuck in the mud, they reached the highway; that, instead of turning north toward Vicksburg, Ruice Stevens, who was driving, turned the automobile south toward Claiborne county; that they proceeded south about twenty-five miles to a point about a mile and a half from the home of his grand-

parents; that they there got out for the announced purpose of hunting in the Claiborne county hills, and started through the woods in the direction of the home of his grandparents; that when they had proceeded only a short distance, his headlight went out, and it was necessary to return to the automobile to mend it; that the appellant and Ruice Stevens promised to wait for his return; that he returned to the automobile and adjusted his light and then returned to the point where he had separated from Ruice Stevens and the appellant but found them gone, and he was unable to locate them; that thereupon he returned to his automobile, and shortly thereafter he heard three shots fired in the direction of the Dungan home; that in about an hour and a half after they had separated, Ruice Stevens and the appellant returned to the automobile, and they then drove to Vicksburg arriving there about two o'clock a. m.

He further testified that on the trip from Claiborne county to Vicksburg, Ruice Stevens and the appellant told him that if anything happened, not to tell that they had been in the hills, but to say that they had been in the swamp, and that if they were arrested, he would be as deep in it as they were. He further testified that, on the day after the killing, and after he had learned of the death of his grandparents, the appellant met him in Vicksburg and again told him not to tell that they had been in the hills, and if any one asked about it, to say that they had been in the swamps, and it was between one and two o'clock in the morning that they reached home; and that if they were arrested for anything, he, the witness, would be in it as deep as they were. He also testified that shortly after they were released from jail, after their first arrest, the appellant told Ruice Stevens that they had their tracks covered up so that they could not catch up with them, and if they stuck to the same story they would not be arrested again.

Josie Lillis testified that for some time previous to the murder she had lived in the home of Mrs. Jessie Mae

Stevens, a daughter of the deceased, the mother of Hobson Stevens, and an aunt of Ruice Stevens; that Ruice and Hobson Stevens resided in this home, and that the appellant and Ruice Stevens frequently hunted together; that about three o'clock in the afternoon of January 20, 1928, Ruice Stevens, Hobson Stevens, and the appellant, left Vicksburg presumably on a hunting trip; that Ruice Stevens was wearing clean khaki trousers; that they returned about two or three o'clock the next morning, at which time she opened the door for Hobson and Ruice Stevens to enter the house; that she did not see the appellant, but heard him talking out at the automobile; that a few days later Ruice Stevens asked her to wash the trousers which he wore on the said hunting trip, and when doing so, she observed blood on the leg and seat thereof. She further testified that, about a month before she was killed, Mrs. Mattie Dungan was at the home of her daughter, Jessie Mae Stevens, and while there, stated that she had one thousand two hundred dollars or one thousand four hundred dollars which she contemplated depositing in a Vicksburg bank, but that Ruice Stevens advised her not to trust a bank, but take the money back home and place it in a tin can and hide in the ceiling in her room; and that she did not deposit the money in Vicksburg. She also testified that after these parties were first arrested and released, the appellant came to the home of Mrs. Stevens and there stated that ''so long as they told the same tale there was no danger of their being caught up with,'' and that Mrs Stevens asked him if they could not have gotten the money without killing her mother, and he replied, ''You know I would not have killed your mother if I knowed it. I thought it was Ed Dungan that came to the door.'' The one thousand four hundred dollars referred to by this witness was not stolen, but was discovered hidden in an outhouse at the Dungan home.

The appellant first contends that the court below erred in refusing to grant a change of venue. Upon the hearing of the motion for the change of venue, the state offered a number of witnesses who testified that there was no prejudice against the appellant and that his case had not been prejudged by the people of the county—that there existed in the minds of the people no such state of excitement or ill will as would prevent him from receiving a fair and impartial trial in that county. Upon the cross-examination of these witnesses, it was developed that a public subscription had been taken in the county for the purpose of hiring detectives and a special prosecutor, and that there was published in the local newspaper some statement of the sheriff to the effect that the right parties had been apprehended, and he had sufficient testimony to convict them. The appellant offered no witnesses on the hearing of this motion, and it was overruled. Later the motion for a change of venue was renewed, and thereupon the appellant offered the stenographic transcript of the testimony that had been heard upon a motion for a change of venue in the trial of Ruice Stevens, and also offered a transcript of the voir dire examination of the jurors in that case. The motion was again overruled and was again renewed at the conclusion of the voir dire examination of the jurors in this case, and was overruled. In the impaneling of the jury the appellant used only eleven peremptory challenges, and thereupon accepted the jury as finally tendered.

Where the testimony is to the effect that the people of the county have not prejudged the defendant's case, and that there is no prejudice against the accused, and the voir dire examination of the prospective jurors shows that a fair proportion of the jurors of the county are qualified for service in the case, it is not error for the trial judge to overrule a motion for a change of venue. Keeton v. State, 132 Miss. 732, 96 So. 179; Jones v. State, 133 Miss. 684, 98 So. 150. We have carefully read the

voir dire examination of all the prospective jurors who were examined in impaneling the jury in the case of Ruice Stevens, as well as those examined in securing a jury in the case at bar, and we are of the opinion that it shows that a fair proportion of the jurors of the county were qualified for service in this case, and that no reversible error was committed in overruling the motion. The examination of the jurors in the case at bar discloses that a number of the prospective jurors were disqualified by the fact that they had attended the trial of Ruice Stevens, and while it is natural that a crime of the character here involved aroused resentment against the perpetrators, a view of the completed trial does not disclose any prejudice against this appellant or any such prejudgment of his case as would prevent him from receiving a fair impartial trial. The trial judge exercised great care in examination of the prospective jurors and excused all those whose qualifications appeared in any way doubtful; and we find nothing in the record that indicates that the appellant was not tried by a fair and impartial jury.

The appellant next earnestly contends that the evidence was not sufficient to warrant the verdict of the jury, and that the peremptory instruction requested by him should have been granted. The argument on this point proceeds, however, principally upon the theory that the testimony of the state witnesses, Hobson Stevens, and Josie Lillis is unworthy of belief, and much stress is laid upon some supposed undue influence exercised over these witnesses by the detective who caused the arrest of the appellant and Stevens. The testimony of these witnesses, if believed, in connection with the facts and circumstances in evidence, was sufficient to support the verdict; and while there was some evidence tending to show opportunity on the part of this detective to have exercised influence over these witnesses, and particularly over Josie Lillis, the credibility of these witnesses and the weight to be given their testimony

was a question for the determination of the jury, and their testimony was not so unreasonable or highly improbable as to be unworthy of belief; consequently the court below committed no error in refusing the peremptory instruction.

The appellant next contends that the court erred in sustaining certain objections to testimony tending to show that the witness, Josie Lillis, was of unchaste character, and that certain alleged charges of immoral· conduct had been made against her by Ruice Stevens, the purpose of this testimony being to impeach the veracity of the witness by showing ill will and prejudice against Stevens and the appellant. The court held that any ill will, bias, or prejudice, against the appellant might be shown. This was all he was entitled to in this regard, and we think it was proper to exclude the details of collateral matters which tended to impeach the reputation and character of the witness for chastity.

The appellant next complains of certain language used by one of the prosecuting attorneys in the argument of the cause before the jury, the language complained of, and set forth in a special bill of exceptions, being, "that the jury which tried Ruice Stevens last June accepted the testimony of Hobson Stevens and Josie Lillis and convicted him, and this jury is perfectly justified in following their decision and convicting the defendant." Counsel for the appellant promptly interposed an objection to this argument, and the court sustained the objection and instructed the jury not to consider this remark of counsel in arriving at their verdict, and that the trial of Ruice Stevens should in nowise influence their verdict in this case. Counsel thereupon moved the court to withdraw the case from the jury and enter a mistrial, but the court overruled this motion. The language used by counsel, as set forth in the special bill of exceptions, was highly improper, but in view of the fact that the court promptly sustained an objection thereto, and fully instructed the jury as to their duty in re-

gard thereto, we do not think it is probable that they were influenced or misled by the statement of counsel; consequently, the language complained of does not constitute reversible error.

The appellant next contends that it was prejudicial error to permit the witness, Josie Lillis, to testify that on the night of the murder, and when Ruice Stevens and the appellant returned from the hunting trip, the trousers worn by Ruice Stevens had blood on the leg and seat thereof, and that she removed this blood by washing the trousers. At the time the blood was alleged to have been discovered, Ruice Stevens and the appellant were together, and it was shown that they had been together since the previous afternoon. The testimony was to the effect that these trousers were clean when these parties left on the hunting trip, and there was no basis in the testimony for any conclusion that the blood on the trousers when they returned, if any, was that of an animal killed during this hunt. There were facts and circumstances in evidence tending to show that there was concert of action between these parties throughout the trip from which they had just returned, and, consequently, we think this testimony was admissible.

The appellant next contends that the court committed error in granting the state an instruction reading as follows:

"The court instructs the jury for the state that if you believe from the evidence in this case beyond a reasonable doubt that Mrs. Mattie Dungan was murdered as alleged in the indictment and that on the night of the killing the defendant went to the Dungan home with Ruice Stevens for the purpose of killing or robbing Drug Dungan or the deceased, Mrs. Mattie Dungan, and that in pursuance and furtherance of said purpose on the part of the said defendant and Ruice Stevens the defendant Allen Shelton shot and killed the said Mrs.

Mattie Dungan then you will find the defendant guilty as charged in the indictment.''

The criticism of this instruction seems to be that it is based upon the assumption that there was a conspiracy between the appellant and Ruice Stevens to kill or rob Mrs. Dungan or her husband, and that there is no evidence to support the conclusion that there was any such conspiracy. While there is no direct testimony of any previous understanding or agreement between these parties, there are facts and circumstances in evidence which fully warrant the finding that there was concert of action between them to accomplish the criminal purpose, and this being true, the state assumed by this instruction a greater burden than was required, and there is no error therein of which the appellant can complain.

The appellant assigns as error the refusal of the following instruction:

''The court instructs the jury that evidence of good character may of itself create a reasonable doubt where otherwise no reasonable doubt would exist, and in relation to that you can give testimony that consideration that you think it is entitled to, taking it into consideration with all the other facts and circumstances of the. case.''

The refusal of this instruction was proper. It is true that in the case of Lewis v. State, 93 Miss. 697, 47 So. 467, the refusal of a similar instruction was held to be erroneous, but this case was overruled by the case of Anderson v. State, 97 Miss. 658, 47 So. 393, and in the very recent case of Calloway v. State (Miss.), 125 So. 109, it was again held that it was proper to refuse an instruction informing the jury that evidence of good character may of itself create a reasonable doubt where otherwise no reasonable doubt would exist.

Finally, the appellant complains of a refusal of an instruction in the following language:

"The court instructs the jury that they are the sole judges of the credibility of the witnesses; that means that the jury are to finally say whether they believe the witnesses told the truth or not, and in determining that the jury may take into consideration the reasonableness or unreasonableness of a witness' statement and his manner while on the stand testifying, and if the jury believe and conclude that anything he has said is false or what he said is through malice or ill will, then in passing upon his testimony they may disbelieve his entire testimony, or they may receive a part or reject a part."

This instruction was properly refused. It will be noted that the jury was thereby charged that, if they believed and concluded that anything a witness testified to was false, then in passing upon his testimony, they might disbelieve his entire testimony, or they might receive a part or reject a part. This instruction omits the necessary qualification that "if the jury believe that any witness has wilfully, knowingly, and corruptly testified falsely as to any material fact or circumstance, then they may disregard his testimony entirely."

We are of the opinion that the evidence is sufficient to support the verdict of the jury, and that no reversible error was committed by the trial court. Therefore the judgment of the court below will be affirmed.

Affirmed.