267 So.2d 302 (1972)
Wesley PARKS
v.
STATE of Mississippi.
No. 46902.
Supreme Court of Mississippi.
October 9, 1972.
Rehearing Denied October 23, 1972.
*303 Dyer & Dyer, Greenville, for appellant.
A.F. Summer, Atty. Gen., by John M. Kinard, and J.B. Garretty, Special Asst. Attys. Gen., Jackson, for appellee.
BRADY, Justice:
The appellant, indicted and tried for murder, was found guilty of manslaughter in the Circuit Court of Sunflower County, Mississippi and sentenced to twenty years imprisonment in the state penitentiary at Parchman, Mississippi. From that verdict and sentence he appeals to this Court.
Tersely stated, the record indicates these relevant facts. On May 25, 1971, the appellant, his wife, infant son and eighteen year-old nephew, Allen Wilkerson, a coindictee, drove to Drew, Mississippi from their home in Memphis, Tennessee. Appellant and Wilkerson drank four quarts of beer prior to leaving that afternoon around 4:00 o'clock p.m. They stopped en route to Drew and appellant drank another can of beer before arriving at the home of his brother, Wayne Parks, another coindictee, around 7:00 p.m. Appellant, Wayne and Allen went into Drew, drank more beer, returned to Wayne's for supper and went back into Drew for more beer. Appellant and Wayne left Allen at Slim's, a grocery store on Union Street, to buy beer while they bought gas at a Billups station. There is conflicting testimony that while at the station appellant flashed a pistol and made unfriendly remarks to a group of colored boys. Appellant and Wayne returned to Slim's to get Allen and, while there, they talked with Bill Mayo, a friend, who invited them over to his house for a party that night. Mayo drove away and appellant started to follow. About four stores down Union Street, in front of Susie's Cafe, appellant pointed a .22 caliber pistol out the window and fired one shot. The bullet hit and killed Miss Joetha Collier, an eighteen year-old female who was on the sidewalk. Wayne immediately told his brother to put the gun up before they were picked up for disturbing the peace. Without any knowledge of the result of the gunshot, the trio followed Mayo around the block to his house. They stayed at Mayo's about forty-five minutes, talking and playing pool. During this period none of the three acted suspicious or nervous in any noticeable manner. The trio then got in appellant's car, drove through Drew, within one block of Union Street, and out onto Highway 49 W and over to Cleveland. The three went to a beer joint called Hayes Marie's where they stayed from approximately 11:00 o'clock p.m. until 1:30 a.m. They then left the beer joint and started back to Drew. They decided to call home and were arrested by the Cleveland Police Department when they stopped at a pay phone. They were placed in the Cleveland jail until the next day when they were taken to the maximum security unit at Parchman Penitentiary. All three were indicted for murder and a Motion for Severance was granted to the appellant.
Appellant has assigned two points as errors in this appeal. The first is that the trial court erred when it overruled his motion for a change of venue. The facts indicate that an unusual amount of publicity surrounded the death of Miss Collier and *304 the arrest of the three men. Members of the Negro community broke windows in Drew and threatened greater violence. Demonstrations were held and marches were made down the streets of Drew. National attention was focused on Drew and the impending trial. Defense counsel made a motion for a change of venue prior to trial which was overruled. Counsel then made its first renewed motion and the second renewed motion to change venue, both of which were overruled.
The appellant contends that he was unable to obtain a fair and impartial trial in Sunflower County. The state and defense placed a number of witnesses on the stand on the original motion for change of venue. The majority of these witnesses testified that they thought a fair trial could not be given to the appellant. A large number testified that they thought it could be given and a few had no opinion. An almost similar number were called on the first renewed motion with the same general results. Appellant, citing Keeton v. State, 132 Miss. 732, 738, 96 So. 179, 180 (1923), argues that it is not necessary that every qualified juror harbor prejudice against the defendant to entitle defendant to a change of venue. Keeton, supra, also states that: "The statute contemplates that the jury shall not only be composed of unbiased and impartial men, but of men who have not been and will not ... be subject to the influence of a popular demand for the defendant's conviction." Nevertheless, as is stated in Dalton v. State, 141 Miss. 841, 846, 105 So. 784, 785 (1925), it has long been the law in this state that: "The granting of a change of venue is a matter so largely in discretion of the trial court that a judgment of conviction will not be reversed on appeal on the ground that a change of venue was refused, unless it clearly appears that trial court abused its discretion." The trial judge in the case at bar had the opportunity to view the prospective jurors, watch their demeanor and form an opinion as to whether or not a fair trial could be given in the county. While it is true the appellant introduced affidavits of a number of people who testified that they did not believe a fair trial was possible, Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961) in quoting from Shelton v. State, 156 Miss. 612, 126 So. 390 (1930), states as follows:
The court must look to all the attendant facts and circumstances and should not and will not reverse a trial judge in the exercise of his discretion if a fair proportion of the jurors examined can give the defendant a fair trial. (240 Miss. at 465, 128 So.2d at 344.)
It is our opinion that the trial judge did not abuse his discretion; therefore, we will not overrule his decision.
The second assignment of error is that the trial court erred when it failed to properly define manslaughter in its instructions to the jury and, therefore, the jury had no guide upon which to base a verdict of guilty of manslaughter. Appellant's argument is focused on the state's Instruction No. 2 which, in part, says "Manslaughter can also be accomplished by the commission of acts so grossly negligent as to evidence a complete disregard for human life." Appellant further argues that the state, in Instruction No. 6, mentioned "culpable negligence" but did not attempt to define the term for the jury. The gist of appellant's argument is that gross negligence is used and defined by the state rather than "culpable negligence" as used in Mississippi Code 1942 Annotated section 2232 (1956), to-wit:
Every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this chapter, shall be manslaughter.
Appellant cites Smith v. State, 197 Miss. 802, 20 So.2d 701 (1945) which defined "culpable negligence" as being of a higher degree than that which in civil cases is held to be gross negligence and must be negligence so gross as to be tantamount to *305 wanton disregard of or utter indifference to the safety of human life." In the present case, the state qualified "grossly negligent" by adding "as to evidence a complete disregard for human life." There cannot be considered any reasonable difference in "complete disregard" and "utter indifference." Smith, supra, which has application here, defined "culpable negligence" as being a high degree of gross negligence; therefore, the language of the state in qualifying "grossly negligent" was sufficient to properly instruct the jury on the manslaughter charge.
This cause, because of the obvious intoxicating beer, is indeed a classical example of the truth declared in Proverbs 23:32 of the Holy Bible: "At the last it biteth like a serpent, and stingeth like an adder."
For the foregoing reasons, the judgment of the lower court is affirmed.
Affirmed.
GILLESPIE, C.J., and JONES, SMITH and SUGG, JJ., concur.