318 So.2d 891 (1975)
Hardy HARALSON
v.
STATE of Mississippi.
No. 48556.
Supreme Court of Mississippi.
September 29, 1975.
*892 Roland C. Lewis, C.A. Henley, Jr., Jackson, for appellant.
A.F. Summer, Atty. Gen. by John C. Underwood, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, SMITH and ROBERTSON, JJ.
ROBERTSON, Justice:
Hardy Haralson was convicted in the Circuit Court of Newton County of the murder of his great nephew, Donald Ray Haralson, and was sentenced to life imprisonment in the Mississippi State Penitentiary.
Defendant assigns as error:
1. Certain alleged prejudicial remarks made by the district attorney in his closing argument.
2. The trial court's failure to grant a change of venue.
3. The trial court's admission into evidence of a shotgun, color pictures of the deceased showing the location of the gunshot wounds, a color photograph of the deceased and his small daughter, and certain testimony.
4. An alleged belligerent attitude and dislike of defendant's counsel by the trial judge, which attitude was allegedly transmitted to the jury and allegedly resulted in a denial of a fair and impartial trial to the defendant.
5. The overruling of appellant's motion for a new trial.
Around 7:15 A.M., Saturday, October 6, 1973, as was his custom, Donald Ray Haralson, a rural mail carrier, drove his pickup truck to the Conehatta Repair Shop to gas up. This repair shop was owned and operated by defendant and his son, Billy, and faced south on State Highway 489 in Newton County.
L.T. McDill, who operated a country store on the south side of State Highway 489, opposite the Conehatta Repair Shop, testified that he saw defendant arrive at *893 the repair shop around 7:00 A.M. and open up for business. McDill saw Donald Ray Haralson arrive a few minutes later and stop by the gas pumps in front of the shop. He heard a shot and saw Donald Ray run out of the store and fall in front of his pickup truck. Right behind Donald Ray was the defendant with a pistol in his hand. McDill saw him fire at least five rounds at Donald Ray as he lay "on the ground about five feet in front of him, rolling on the ground hollering for help." Donald Ray staggered across Highway 489 to a sign post on the edge of a roadside ditch. McDill saw the defendant go back in the store and reappear with a shotgun in his hands. He saw the defendant walk down near Highway 489 and fire two rounds at Donald Ray. Donald Ray was on his hands and knees begging for help at the time defendant fired. Donald Ray had nothing in his hands and lay still after the shotgun blasts.
Mrs. Virginia Emmons, a sister of L.T. McDill, had a trailer home located just east of her brother's store. When she heard the first shot, she came to the living room window of her trailer home and saw Hardy Haralson empty his pistol at Donald Ray, who was down on the ground begging for help. She ran out of her trailer with her 3-year-old son, and pleaded with the defendant not to shoot Donald Ray any more. He ignored her and shot twice at Donald Ray with the shotgun.
Randy, Mrs. Emmons' 17-year-old son, also saw the shooting and testified similarly to his mother and uncle, L.T. McDill.
Charles Emmons, the husband of Mrs. Virginia Emmons and the father of Randy, was called from the pasture by Randy, and loaded Donald Ray in his truck and took him to the Newton County Hospital.
Elizabeth Meske, a nurse at the Newton County Hospital, testified that she attended Dr. Boggan as he examined Donald Ray Haralson in the emergency room of the Newton County Hospital on the morning of October 6, 1973, and that there were 16 gunshot wounds ranging down the left side from the left arm pit to the left thigh, and then around in the left lower back.
Dr. Boggan testified that the cause of death was "multiple gunshot wounds of the body, particularly of the chest." Dr. Boggan stated that as he remembered it there were 12 gunshot wounds, three on the left thigh, five along the left chest and trunk, two in the left lower back, and at least two in the left arm. Some wounds were made by a small caliber pistol and others appeared to have been made with a different type weapon.
Sheriff W.R. Lindsley and deputy sheriff Dale Weaver both testified that after they had examined the scene of the shooting on the morning of October 6, 1973, they went to Hardy Haralson's home to arrest him. As Lindsley and Weaver drove up they saw the defendant coming from his dog pen. Before they had a chance to speak, the defendant said:
"[D]amn it, Sheriff, I guess you've come after me, I killed the son-of-a-bitch, I wasn't going to stand by and let him break up my son's home."
Sheriff Lindsley said that he told Mr. Hardy not to say anything else until he had advised him of his rights; that he did advise him of his Miranda rights and then placed him under arrest for shooting Donald Haralson.
The sheriff further testified that he asked him where the gun was, and defendant told him that it was in the house; that Billy Haralson, the defendant's son, went in the old house where the defendant, Billy and his family, had formerly lived and returned with a 12-gauge J.C. Higgins pump gun. After being identified by the sheriff and deputy sheriff, this shotgun was admitted as an exhibit over the objection of the defendant.
The defendant, a 78-year-old man, took the stand in his own defense. He admitted *894 that he shot Donald Ray Haralson a number of times with a pistol and twice with a shotgun, stating at one time that he shot him in self-defense and at another time that he had told him to stay away from the store because he was getting too friendly with his son Billy's wife, and Donald Ray had not stayed away. Defendant said that Donald Ray was advancing on him in a threatening manner at the time the defendant first shot him. The defendant further testified that he thought Donald Ray was going to his truck for a gun, that he figured there was going to be a shoot-out, and that he would rather have the shotgun than the pistol, and that was the reason he swapped the pistol for the shotgun, and proceeded to shoot Donald Ray twice with the shotgun.
P.D. Welburn, who had worked for International Paper Company blowing beaver dams, testified that Donald Ray Haralson had told him on Tuesday night, October 2nd, that he was going to kill the defendant. Welburn stated that he communicated this threat to the defendant three days later, on Friday night, October 5th.
There is no merit in the first assignment of error. Most of the remarks of the district attorney were not objected to, and the court was not given an opportunity to rule on them. Those that were objected to were based on the evidence in the record and in our opinion were within the proper scope of summation. This Court said in Chinn v. State, 276 So.2d 456 (Miss. 1973):
"It has long been the rule that this Court recognizes the right and duty of an attorney to deduce and argue reasonable conclusions based upon the evidence, which are favorable to their clients, and they may do so whether conclusions so urged are weak or strong so long as legitimate, and it is the function of the jury to determine the logic and the weight of the conclusion."
276 So.2d at 459.
The defendant next contends that the lower court erred in failing to grant a change of venue. The killing took place on October 6, 1973. The trial was finally begun on March 25, 1974, over five months later. The defendant was tried in the county where he had lived all of his life, by a jury of his peers. The trial court had no particular difficulty in qualifying a jury that would agree to properly try the case on the evidence adduced and the instructions given. W.H. Johnson, a former legislator and district attorney and president of the local bar association, testified that defendant could receive a fair trial in Newton County. Sheriff Lindsley of Newton County and Parks Wilson, chief of police of the town of Newton, both testified that in their opinion defendant could receive a fair trial.
In Parks v. State, 267 So.2d 302 (Miss. 1972), this Court quoted with approval from Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961):
"The court must look to all the attendant facts and circumstances and should not and will not reverse a trial judge in the exercise of his discretion if a fair proportion of the jurors examined can give the defendant a fair trial. Shelton v. State, 156 Miss. 612, 126 So. 390." (240 Miss. at 465, 128 So.2d at 344). (267 So.2d at 304).
The trial court did not abuse its discretion in refusing to grant a change of venue.
The defendant contends that the shotgun was wrongfully allowed to be introduced into evidence. There is no merit to this contention. Sheriff Lindsley testified that Billy Haralson, the defendant's son, volunteered to get the shotgun from the old house where both Billy Haralson and his family and the defendant had formerly lived. Since Billy Haralson had been a joint occupier of the former home and was now using the old home to store furniture in, he had a right to retrieve the *895 shotgun for the sheriff. See United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The trial court was correct in allowing the shotgun to be introduced into evidence.
Defendant also argues that the trial court erred in admitting as an exhibit a color photograph of the deceased with his little daughter, and also several color pictures of the deceased's body showing the location of the bullet wounds. All of these pictures had definite evidentiary value, and the trial court did not abuse its discretion in admitting these pictures into evidence.
Defendant contends that he was prejudiced by the introduction of the clothing worn by the deceased at the time of his death because it had a bad odor. This clothing was in substantially the same condition as it was when removed from the deceased's body immediately after the shooting. It had probative value in showing the location of the bullet holes and the nature of the wounds inflicted. The trial court was correct in admitting these articles of clothing as exhibits. See Ivey v. State, 232 So.2d 368 (Miss. 1970), and Rose v. State, 170 Miss. 550, 155 So. 341 (1934).
There is absolutely no merit to the assignment of error that the lower court's belligerent attitude toward defense counsel prejudiced defendant's case. The record consists of six volumes containing 1039 pages. Defense counsel asked for and got most of 56 instructions to the jury, even though there was great duplication and repetition. The trial court, in this Court's opinion, was very patient and fair with the defendant and his counsel during a long and exhaustive trial.
The defendant was tried fairly and impartially, and the jury reached the only verdict it could reach from the evidence adduced.
The trial being without substantial error, the trial court did not err in overruling appellant's motion for a new trial.
The conviction and sentence of the defendant are, therefore, affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, INZER, SUGG, WALKER and BROOM, JJ., concur.