BURR *v.* STATE.

No. 41243        October 12, 1959        114 So. 2d 764

*G. L. Lucas,* Columbus, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

McGEHEE, C. J.

The appellant Varna T. Burr was indicted for the murder of her nine year old son by a former marriage, George Earl Waterford, and was convicted of manslaughter in Lowndes County, and sentenced to serve a term of 18 years in the state penitentiary.

The proof disclosed that the death of the child was due to a beating administered by the appellant due to the fact that this boy came home from school with mud on his shoes and with one of his coat pockets torn. There were no eyewitnesses to the beating of the boy by his mother, and neither did she nor anyone else testify at the trial as to what happened.

Two witnesses for the State, a deputy sheriff and the coroner, established the prosecution's case by their testimony as to an investigation made by them while interrogating the appellant, and from an autopsy performed by two doctors.

The appellant related to these two officers that she was the only one who had whipped the child and that she did it with an elm switch cut in the yard near the fence. She was unable to point out any place from which a switch of any kind had been cut, but the officers finally found an iron or steel poker in the house which was bent near one end in a gooseneck fashion, and which corresponded to some of the whelps on the child's body as disclosed by the autopsy.

The appellant further related that after she whipped the child he had assisted his stepfather in bringing in some stovewood that evening, and that on the next morning he was able to come to breakfast, although he thereafter went back to bed and died two or three hours later while appellant was endeavoring to get someone to take him to a doctor. But according to the testimony of the physicians who made the autopsy, the child's body was beaten into a pulp from his hips down to the back of his knees and that he evidently went into shock immediately

after the beating the afternoon before, and from which he never recovered.

As heretofore stated, the defense offered no testimony as to what occurred in connection with the beating of the child, but did offer the testimony of physicians who were of the opinion that no one could commit such a merciless and brutal beating of their own child if they had understood the nature and character of their act when the crime was being committed, since in their opinion it required at least 30 minutes or more to inflict this punishment. A doctor who testified for the prosecution was of the opinion that under all of the facts and circumstances the appellant knew the difference between right and wrong and that she was just angry toward the child or mad with him.

■■■ In other words, the defense interposed was that the crime was committed under an uncontrollable impulse and that the mother could not therefore be held accountable for what she had done. However, we find that under the case of Eatman v. State, 169 Miss. 295, 153 So. 381, the defense of irresistible or uncontrollable impulse to commit an offense is unavailable unless such impulse springs from mental illness to such a degree as to overwhelm reason, judgment and conscience. This case followed the cases of Smith v. State, 95 Miss. 786, 49 So. 945, and Singleton v. State, 71 Miss. 782, 16 So. 295, and in the Eatman case this Court said: "And the defense of want of inhibitory powers, or as otherwise experssed, the defense of irresistible or uncontrollable impulse was declared in that case to be unavailable, unless the uncontrollable impulse spring from a mental disease existing to such a high degree as to overwhelm the reason, judgment, and conscience, in which case, as the Court adds, the accused would be unable to distinguish the right and wrong of a matter." And in the Singleton case the Court said: "Nothing suggests a doubt of his sanity, unless it is the enormity of his crime, and it

would be unsafe to indulge a presumption of a want of sanity from that alone, * * *."

In the instant case there was no testimony offered that would trend to disclose that the appellant suffered from any hereditary insanity or that she had committed any previous abnormal acts, tending to show that she was a moron or a person of low mentality. The jury was justified in believing that she would have had to be a full fledged idiot not to have known that what she was doing was wrong. The doctors who testified in support of her theory that she did not appreciate the nature and character of her act, based their testimony upon the enormity and brutality of the crime alone. There was no proof that the alleged uncontrollable impulse sprang from mental disease existing to such degree as to overwhelm reason, judgment and conscience. As heretofore stated there was no intimation in the testimony that the appellant was suffering from a mental disease.

The appellant complains, however, of an instruction given to the State in the following language: ''The court charges the jury for the State that every person under the law is presumed to be sane and responsible for their acts.'' But the appellant obtained an instruction ''that no person can be held criminally responsible for any act committed by the person when he or she does not know and appreciate the nature and quality of that act, * * * , because such a mental condition is insanity under the law of this state which says that insane persons cannot be criminally punished for what they do, and this is true, regardless of whether such mental condition is temporary or permanent.'' Moreover, the appellant obtained another instruction to the jury ''that if you believe from the evidence that the defendant, at the time of the alleged commission of the alleged crime, was a sufferer from some mental disorder, from any cause, which broke down in her the capacity to distinguish between right and wrong with reference to the act she is charged with

doing, * * * then it is immaterial whether she was totally or only partially insane on other subjects. There can be no such thing as motive without mental accountability, and this cannot co-exist with an incapacity from mental disease to distinguish between right and wrong.'' There was no evidence offered to justify the granting of either of the said two instructions on behalf of the appellant. Again the court instructed the jury for the appellant ''that in order to sustain the defense of insanity it is not necessary that the insanity of the accused be established, by a preponderance of evidence; if, upon the whole evidence, the jury entertain a reasonable doubt as to the sanity of the accused at the time of the alleged homicide, they must acquit her.''

We think that when the foregoing instructions, both the one complained of granted the State and those granted for the appellant, are considered as a whole, they did not place upon the appellant the burden of proof as to her alleged insanity, as prohibited by the holding in the cases of Cunningham v. State, 56 Miss. 269, 21 Am. Rep. 360; Waycaster v. State, 185 Miss. 25, 187 So. 205; Williams v. State, 205 Miss. 515, 39 So. 2d 3, and the other cases relied upon by the appellant; that, moreover, the defense relied upon by the appellant in the case at bar was unavailable under the law of this State as set forth in the Singleton and Eatman cases, supra, in the absence of any proof made by the appellant that her alleged irresistible or uncontrollable impulse to commit the offense sprang from mental disease existing to such degree as to overwhelm reason, judgment and conscience, and where such defense was based alone, as here, upon the enormity and brutality of the crime with which she was charged and convicted. In other words, we are of the opinion that although the testimony of the doctors, none of whom claim to be mental experts, was conflicting in some particulars, the verdict of conviction was nevertheless amply justified and

supported by the evidence, and that therefore the conviction and judgment should be affirmed.

Affirmed.

*Lee, Kyle, Arrington* and *Gillespie, JJ.*, concur.