454 So.2d 445 (1984)
James E. BILLIOT
v.
STATE of Mississippi.
No. 54960.
Supreme Court of Mississippi.
June 6, 1984.
Rehearing Denied August 22, 1984.
*451 Yvonne Chapman Sills, Nicholas M. Haas, Bay St. Louis, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Catherine Walker Underwood, Asst. Atty. Gen., Jackson, for appellee.
Before the court en banc.
SULLIVAN, Justice, for the Court:
James E. Billiot was indicted for the capital murder of Wallace J. Croll, Jr., by the grand jury of Hancock County, Mississippi. Billiot obtained a change of venue and was thereafter in a bifurcated trial found guilty and sentenced to death by a jury in the Circuit Court of Harrison County, Mississippi.
On Thanksgiving Day, November 26, 1981, Wallace Croll, Jr., Billiot's stepfather, was found bludgeoned to death in his home. Billiot's mother and Billiot's 14-year-old stepsister were also found in the home, killed in the same manner. The bodies were found by 12-year-old Stephen Croll, Chris Lee, and George Hebbler. Young Croll, Lee and Hebbler were returning from Picayune, Mississippi, on the morning of November 26, 1981, when they saw James Billiot driving Wallace Croll's car. They became suspicious and immediately went to Croll's Leetown community home. There they found the bodies, as well as an 8-pound sledge hammer lying near the deceased. On the floor, they also found Wallace Croll's wallet and several papers scattered about.
Bryan Strickland, a Leetown resident and acquaintance of Billiot's, testified that on November 7, 1981, while at the Living Waters Church of God in Picayune, Mississippi, James Billiot told Strickland that he was going to kill his mother and his stepfather. Leo Jones testified that on the morning of November 26, 1981, he saw Billiot hitchhiking and gave him a ride from Picayune to the Leetown community. Billiot did not want to be let out in front of the Croll house in Leetown but insisted on being let out by a field near the house.
When the bodies were found, an all-points bulletin was issued in Mississippi and Louisiana and two days later Billiot was arrested by the New Orleans police department. After a hearing he was extradited to Mississippi. On April 27, 1982, appellant filed the following motions: Motion to suppress evidence; motion to change venue; motion to conduct mental examination of defendant, and motion to conduct separate hearing on robbery charges.
During the July, 1982, term of the court a hearing was had on the motion for change of venue and the motion for psychiatric examination. The motion to change venue was denied and the motion for psychiatric examination was sustained.
In September, 1982, appellant filed several more motions including a motion to prohibit jury dispersal, motion to request special venire, notice of insanity defense, motion for omnibus hearing and motion to suppress evidence. In October, 1982, the *452 motion to suppress was overruled, after a full hearing. The motion for change of venue was sustained from Hancock County to adjacent Harrison County. Appellant objected to Harrison County as the site of the new venue but this objection was overruled. On November 15, 1982, appellant filed a motion for continuance. This motion was overruled and on November 29 and 30, 1982, the trial court overruled the motion for individual voir dire of the jury and a renewal motion for change of venue. After Billiot had undergone mental examination at the State Hospital at Whitfield, Mississippi, and had been determined competent to stand trial, the trial was conducted from November 29  December 2, 1982. The sole defense was insanity.
With the exception of the expert testimony on the question of Billiot's sanity, the evidence adduced at the trial was largely uncontradicted.
Appellant's motions for judgment notwithstanding the verdict and for a new trial were denied and he perfected this appeal, and assigns as error the following, to-wit:
I. The court erred in denying appellant's attorneys a reasonable amount by way of expenses in order to conduct an investigation into the mood and attitude of the community toward appellant in furtherance of appellant's motion for change of venue.
II. The court erred in refusing the defendant a change of venue and/or a continuance.
III. The jury selection process under Section 97-3-19 (Capital murder statute) and Section 99-19-101 (Separate sentencing proceeding in capital cases) is unconstitutional.
IV. The state failed to provide the defendant a special venire.
V. Appellant's right to a fair and impartial trial was denied by the court by: (1) denying appellant's request for individual voir dire of the potential jurors; (2) limiting appellant's voir dire of potential jurors; (3) refusing to excuse jurors for cause upon appellant's motion; (4) denying appellant additional peremptory challenges.
VI. The court erred in overruling defendant's motion to suppress the statements of the defendant.
VII. The court erred in allowing Dr. Henry A. Maggio to testify on the issue of insanity.
VIII. The court erred in permitting the introduction of full color photographs of the victim and of the murder weapon as neither had any probative value but served only to inflame and prejudice the jury.
IX. The court erred in refusing defendant's instructions on the insanity issue.
X. The court erred in denying appellant's instruction D-9.
XI. The court failed to give clear instructions as to the state's burden of proof of the underlying felony and such error was fatal to the verdict.
XII. The court erred in overruling appellant's motion for a directed verdict at the close of the state's case and in overruling appellant's request for a peremptory instruction at the close of the trial.
XIII. The verdict of the jury was against the overwhelming weight of the evidence.
XIV. Verdict of the jury finding appellant guilty of capital murder was against the overwhelming weight of credible evidence.
XV. The imposition of the death penalty is cruel and unusual punishment per se.
XVI. Section 99-19-101(5)(h) is unconstitutionally vague, ambiguous and overbroad in violation of the due process clause of the fifth and fourteenth amendments of the United States Constitution and of Section Fourteen of the Mississippi Constitution and of the prohibition against cruel and inhuman punishment of the eighth and fourteenth amendments of the United States Constitution and of Section twenty-eight of the Mississippi Constitution.
XVII. Section 99-19-101(5)(b) is unconstitutional as it violates the due process clause of the fifth and fourteenth amendments *453 of the United States Constitution and of Section fourteen of the Mississippi Constitution, the double jeopardy clause of the fifth and fourteenth amendments of the United States Constitution and of Section twenty-two of the Mississippi Constitution, and the prohibition against cruel and unusual punishment of the eighth and fourteenth amendment of the United States Constitution and of Section twenty-eight of the Mississippi Constitution.
XVIII. Sentencing instruction given by the court was improper by directing the jury to find as an aggravating circumstance that the murder was especially heinous, atrocious or cruel.
XIX. Sentencing instruction given by the court was misleading in that the jury believed it must impose death if any mitigating circumstances failed to outweigh the aggravating circumstances.
XX. The evidence does not support the jury's finding of a statutory aggravating circumstance which outweighed any mitigating circumstances.

I.

THE COURT ERRED IN DENYING APPELLANT'S ATTORNEYS A REASONABLE AMOUNT BY WAY OF EXPENSES IN ORDER TO CONDUCT AN INVESTIGATION INTO THE MOOD AND ATTITUDE OF THE COMMUNITY TOWARD APPELLANT IN FURTHERANCE OF APPELLANT'S MOTION FOR CHANGE OF VENUE.
Billiot, through his attorneys, requested the court to allow a reasonable expense for the retention of an investigator to interview citizens in order to ascertain the mood of the community and its predisposition of his case. This motion was denied by the court.
It is contended that the failure to allow such expenses violated Mississippi Code Annotated § 99-15-17 as well as equal protection and effective assistance of counsel under United States Constitutional provisions.
Mississippi Code Annotated § 99-15-15 (1972) requires the appointment of counsel for indigent defendants charged with certain crimes, and Mississippi Code Annotated § 99-15-17 (Supp. 1983), allows for reimbursement to counsel so appointed for "actual expenses". The statute does not define what "actual expenses" contemplates.
In Bright v. State, 293 So.2d 818 (Miss. 1974), this Court held that the state was not required to furnish an indigent defendant expenses for an independent chemist and noted that the right to expert witnesses for defendant at the expense of the state has generally been denied. Id. at 822. In Davis v. State, 374 So.2d 1293 (Miss. 1979), we concluded that the denial of an indigent defendant's request for expenses to hire a handwriting expert violated neither the United States nor the Mississippi Constitution, and we further said that the determination of whether to provide an expert shall be made on a case-by-case basis:
We do not enter this field of inquiry to make the determination that the state owes to the indigent the duty of providing an expert as a part of due process to which the defendant is entitled, for, as stated in the Watson case, supra, the decision should be on a case by case basis, and, unlike the Bradford case, supra, the guilt or innocence of the defendant was scarcely, if at all, dependent on the state's expert witness, and also for reasons next to be noticed.
Id. at 1297. And finally, in Bullock v. State, 391 So.2d 601 (Miss. 1980), this Court denied funds to employ a criminal investigator where,
The appellant did not outline any specific costs for such an investigator, and did not indicate to the court in any specific terms as to the purpose and value of such an individual to the defense.
Id. at 607. The purpose of the request for expenses to hire an investigator was to show the disposition of the community which ultimately was shown by other means. However, at no time did appellant *454 outline any specific cost for the investigation. When we apply the case-by-case approach employed by Davis v. State, supra, to the facts on this record, we find that the denial by the trial court of reasonable expenses to conduct the investigation violated neither Billiot's constitutional nor statutory rights. Appellant's first assignment of error is without merit.

II.

THE COURT ERRED IN REFUSING THE DEFENDANT A CHANGE OF VENUE AND/OR A CONTINUANCE.
Appellant's motion for change of venue was not accompanied by the two supporting affidavits as required by statute. Nevertheless, a hearing on the motion was conducted. The motion was initially overruled but the trial court reserved a final ruling until after voir dire of the jury. Prior to the beginning of the trial, the trial court moved venue to adjacent Harrison County, to which appellant again objected. After voir dire and impaneling of the jury, the motion was finally overruled.
The trial court would have been correct in withholding its ruling on the motion for change of venue based on the failure to provide the two statutory affidavits. However, there is ample authority in our jurisprudence that once the trial court proceeds to a hearing on the motion and takes evidence that this Court may review his findings on appeal. Gentry v. State, 416 So.2d 650 (Miss. 1982); Gilliard v. State, 428 So.2d 576 (Miss. 1983); Fabian v. State, 267 So.2d 294 (Miss. 1972); Wilson v. State, 234 So.2d 303 (Miss. 1970). This is particularly true in light of Mississippi Code Annotated § 99-19-105, Irving v. State, 361 So.2d 1360 (Miss. 1978), and Laney v. State, 421 So.2d 1216 (Miss. 1982), which require heightened review in capital cases.
The rule has become well established that,
"The granting of a change of venue is a matter so largely in discretion [sic] of the trial court that a judgment of conviction will not be reversed on appeal on the ground that a change of venue was refused, unless it clearly appears that trial [sic] court abused its discretion."
Parks v. State, 267 So.2d 302, 304 (Miss. 1972), quoting Dalton v. State, 141 Miss. 841, 846, 105 So. 784, 785 (1925). See also, Daumer v. State, 381 So.2d 1014 (Miss. 1980); Saucier v. State, 328 So.2d 355 (Miss. 1976).
This Court has further expounded upon the requirements of Mississippi Code Annotated § 99-15-35 (1972). For instance, in Tubbs v. State, 402 So.2d 830 (Miss. 1981), the Court quoted Shelton v. State, 156 Miss. 612, 620, 126 So. 390, 393 (1930).
Where the testimony is to the effect that the people of the county have not prejudged the defendant's case, and that there is no prejudice against the accused, and the voir dire examination of the prospective jurors shows that a fair proportion of the jurors of the county are qualified for service in the case, it is not error for the trial judge to overrule a motion for a change of venue.
402 So.2d at 837. And, in Parks v. State, supra, this Court, noting that the trial judge had developed evidence the majority of which indicated that the defendant could receive a fair trial, stated,
The trial judge in the case at bar had the opportunity to view the prospective jurors, watch their demeanor and form an opinion as to whether or not a fair trial could be given in the county. While it is true the appellant introduced affidavits of a number of people who testified that they did not believe a fair trial was possible, Stokes v. State, 240 Miss. 453, 128 So.2d 341 (1961) in quoting from Shelton v. State, 156 Miss. 612, 126 So. 390 (1930), states as follows:
The court must look to all the attendant facts and circumstances and should not and will not reverse a trial judge in the exercise of his discretion if a fair proportion of the jurors examined can give the defendant a fair trial (240 Miss. at 465, 128 So.2d at 344). *455 It is our opinion that the trial judge did not abuse his discretion; therefore, we will not overrule his decision.
267 So.2d at 304.
Finally, in deciding whether the trial judge has so abused his discretion "this Court will look to the completed trial including the voir dire examination of the jurors to ascertain if the defendants have received a fair and impartial trial." Franklin v. State, 189 Miss. 142, 158-59, 196 So. 787, 789 (1940); Stevenson v. State, 325 So.2d 113, 118 (Miss. 1975).
The record reflects that the trial court gave two reasons for the move to Harrison County. One, that it would be "far more convenient to try the matter in Harrison County" where there is a continuous court term as opposed to the 10-week term in Hancock County. Two, it was felt by the trial court that 12 jurors could be selected from the larger Harrison County. The trial court reserved ruling until the jury was selected.
On November 15, 1982, a hearing was conducted on the motion for continuance which was filed because of, among other things, the Biloxi jail fire. Appellant contends that this fire, along with the John Hinckley acquittal on the grounds of insanity, would make it impossible to receive a fair trial. This motion was denied.
That the trial court might better have moved the trial further away from Hancock County is not the issue before us. The question is, Did the trial court's refusal to grant another change of venue from Harrison County deprive this defendant of the right to have his case fairly and impartially tried and uninfluenced by the preponderant sentiment of the community? Upon a review of the entire record of this proceeding, we cannot say that the trial court abused his discretion in refusing to grant an additional change of venue from Harrison County. Billiot was not "flung to the lions". The second assignment of error is without merit.

III.

THE JURY SELECTION PROCESS UNDER SECTION 97-3-19 (CAPITAL MURDER STATUTE) AND SECTION 99-19-101 (SEPARATE SENTENCING PROCEEDING IN CAPITAL CASES) IS UNCONSTITUTIONAL.
Appellant complains that the same jury heard both the guilt and sentencing phases of this trial, and that this jury was "death qualified." Appellant did not raise this objection in the trial court and has waived his right to object on appeal, notwithstanding the constitutional nature of the claim. Stringer v. State, 279 So.2d 156, 159 (Miss. 1973). In Engle v. Isaac, 456 U.S. 107, 133-34, 102 S.Ct. 1558, 1574, 71 L.Ed.2d 783, 804 (1982), the United States Supreme Court stated,
We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.
Notwithstanding this waiver, under heightened review we will address the merits of this assignment.
The practice of impaneling only one jury for both phases "if practical" was mandated by Jackson v. State, 337 So.2d 1242, 1256 (Miss. 1976). See also, Tubbs v. State, 402 So.2d 830 (Miss. 1981), and Bell v. Watkins, 381 So.2d 118, 119, 133 (Miss. 1980).
The same argument was presented to this Court in Culberson v. State, 379 So.2d 499 (Miss. 1979), and there we held that the trial court's retention of the same jury to try both the guilt and the sentence phase was "preferred" as well as permissible, and said further,
However, we do note that a challenge for cause may be properly sustained when a prospective juror indicates that he will automatically vote against the imposition of capital punishment without regard to any evidence that might be developed. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); Spinkellink v. Wainwright, 578 F.2d 582, 592-93 *456 (5th Cir.1978). Conversely, he may be accepted as a juror if in spite of his nonbelief in capital punishment he can put such belief aside and follow the law and evidence in accord with his oath to render a true verdict.
Id. at 508. Unlike Culberson, supra, here we have a lengthy transcript of the voir dire.
We reaffirm our previous decisions that the jury selection process under Mississippi Code Annotated § 97-3-19 (Supp. 1983) and § 99-19-101 (Supp. 1983), are constitutional. This assignment of error is without merit.

IV.

THE STATE FAILED TO PROVIDE THE DEFENDANT A SPECIAL VENIRE.
Mississippi Code Annotated § 13-5-77 (1972) provides that in certain criminal cases, including capital cases, the defendant is, upon request, entitled to a special venire of at least forty persons. Uniform Criminal Rules of Circuit Court Practice 4.10 provides for essentially the same thing. Mississippi Code Annotated § 99-15-27 (1972), provides that, upon motion, the defendant is entitled to a list of the special veniremen so summoned. Appellant made a motion for a special venire and neither the special venire nor the list of special veniremen was ever provided to him.
The motion was filed on September 13, 1982 and appellant made three other appearances before the trial court, including the day the trial began on November 29, 1982. At no time did he again raise the motion for special venire. On the trial date, appellant raised other motions which were disposed of by the court prior to the impaneling of the jury. At no time did appellant object to the failure to provide for a special venire. We note, however, that the record shows that at least fifty jurors were considered before impaneling the twelve jurors and the two alternates.
Our rule is that a party making a motion must "follow up that action by bringing it to the attention of the judge and by requesting a hearing upon it." Sharplin v. State, 357 So.2d 940, 943 (Miss. 1978). It "is the responsibility of the movant to obtain a ruling from the court on motions filed by him, and failure to do so constitutes a waiver of same." Martin v. State, 354 So.2d 1114, 1119 (Miss. 1978). Upon the authority, appellant has waived his request for a special venire and a list of the veniremen so summoned. The fourth assignment of error is without merit.

V.

APPELLANT'S RIGHT TO A FAIR AND IMPARTIAL TRIAL WAS DENIED BY THE COURT BY: (1) DENYING APPELLANT'S REQUEST FOR INDIVIDUAL VOIR DIRE OF THE POTENTIAL JURORS; (2) LIMITING APPELLANT'S VOIR DIRE OF POTENTIAL JURORS; (3) REFUSING TO EXCUSE JURORS FOR CAUSE UPON APPELLANT'S MOTION; (4) DENYING APPELLANT ADDITIONAL PEREMPTORY CHALLENGES.
One hundred and thirteen pages of voir dire were conducted by defense counsel and individual responses appear on one hundred and twelve of those pages, comprising 547 individual responses. Appellant was all but unlimited in his questioning of the individual prospective jurors.
Uniform Criminal Rule of Circuit Court Practice 5.02 provides that voir dire examination of jurors shall be directed to the entire venire with questions addressed to individual members only upon good cause and so as to inquire into juror answers. This practice has been upheld by our case law. See Peters v. State, 314 So.2d 724 (Miss. 1975); Gray v. State, 375 So.2d 994 (Miss. 1979); and Speagle v. State, 390 So.2d 990 (Miss. 1980). The mandates of those cases were far exceeded here and there was no error.
*457 In his next proposition appellant cites seven specific instances of limitation of his voir dire of potential jurors. A careful examination of the entire voir dire with particular emphasis on the seven rulings complained of does not show that the trial court abused its discretion and no clear prejudice to the accused resulted from any undue constraint on the defense or undue lack of constraint on the prosecution. See Jones v. State, 381 So.2d 983, 990 (Miss. 1980), cert. den., 449 U.S. 1003, 101 S.Ct. 543, 66 L.Ed.2d 300.
In his next proposition appellant contends that the trial court improperly refused to excuse three jurors for cause based upon their reluctance to be openminded on the issue of the insanity defense, thus requiring appellant to expend peremptory challenges to exclude the three prospective jurors from service. Directly connected to this proposition is the last argument of appellant in this assignment that the court erroneously denied his request for at least an additional four peremptory challenges in order to choose a fair and impartial jury.
Generally a juror who may be removed on a challenge for cause is one against whom a cause for challenge exists that would likely effect his competency or his impartiality at trial. Though the issue here is the attitude of prospective jurors toward the insanity defense, our holding in Armstrong v. State, 214 So.2d 589 (Miss. 1968), cert. den. 395 U.S. 965, 89 S.Ct. 2109, 23 L.Ed.2d 750, is most instructive. There we noted that the proper method of bringing the death penalty to the attention of the jury is for the trial judge to so inform them. We then said,
Those who say that they could follow the evidence and the instructions of the court should be retained, and those who cannot follow the instructions of the court should be released. The mere fact that a venireman is opposed to the death penalty does not disqualify him as a juryman, if he can do his duty as a citizen and juror and follow the instructions of the court, and where he is convinced of the defendant's guilt he can convict him although the verdict of the jury may result in the death penalty's being inflicted upon the defendant.
Id. at 593. The principles announced in Armstrong v. State, supra, are instructive here. As two of the three prospective jurors complained of stated that they could sit impartially and fairly and follow the instructions of the court, then it was not reversible error for the trial court to refuse to excuse them on challenge for cause. The third prospective juror, however, indicated that she would "try" to follow the court's instruction. This is not enough. When the trial court declined to excuse this juror for cause, appellant promptly peremptorily excused her so that she did not sit on the panel. The general rule is that failure to excuse for cause is error when appellant has exhausted his peremptory challenges. See, e.g., Rush v. State, 278 So.2d 456 (Miss. 1973). At the time this juror was peremptorily excused, appellant had not exhausted his peremptory challenges, and he did not do so until the choosing of the last alternate juror. Appellant did not thereafter ask for any more challenges either for cause or peremptory. Therefore, there was no reversible error.
As he did not request additional peremptory challenges at the trial, it is fruitless for appellant to assign as error the trial court's refusal to grant extra peremptory challenges. Thereafter he asked for no more challenges and did not ask any questions of the last juror. In a situation such as this, we have held that there is no legal duty of the court to grant an extra peremptory challenge to defendant. See Shimniok v. State, 197 Miss. 179, 19 So.2d 760 (1944).

VI.

THE COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS THE STATEMENTS OF THE DEFENDANT.
As a general rule the confession of an insane person cannot be admitted into evidence because he cannot waive his constitutional right. Hollins v. State, 340 *458 So.2d 438, 441 (Miss. 1976); Williamson v. State, 330 So.2d 272, 276 (Miss. 1976); and Harvey v. State, 207 So.2d 108, 116 (Miss. 1968). Harvey held that a confession cannot be admitted into evidence if it is apparent that the defendant is not mentally capable of understanding the gravity of the charge against him or the meaning of the waiver of his constitutional rights. In qualification of the general rule, the Court further said in Harvey,
However, it has been pointed out by the various courts that manifestly the will of a person who is of weak intellect or mentally deficient may be more easily overcome than that of one who is more intelligent; still, until it is shown that a weakminded person has been over-reached to the end that he has divulged that which he would not have divulged had he not been overreached, his voluntary confession is admissible. 20 Am. Jur. Evidence § 522 (1939).
Id. at 116. At his extradition hearing in Louisiana, the New Orleans judge advised Billiot of his Miranda rights, [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)], and advised the four officers who were transporting Billiot back to Mississippi not to talk with the appellant. Notwithstanding this, during the return trip to Hancock County, Mississippi, Billiot made numerous statements concerning the details of the crime and did this in spite of repeated warnings by the four law enforcement officials that they could not speak with him and that he should not be speaking with them. One of the officers did ask Billiot if he knew why he was going back to Mississippi, though this question was asked in conjunction with a statement that the officers did not want to talk with the appellant.
At the suppression hearing there was also considerable expert medical testimony. Billiot had been subjected to a mental examination at the State Hospital at Whitfield to determine whether he was criminally responsible. The report issued was in the form of a majority report which indicated that Billiot was criminally responsible and a minority report which indicated that on November 26, 1981, Billiot was not criminally responsible. It was further established that Billiot had an I.Q. of 91, which is within the average range. He also scored 88 on the Georgia Court Competency Test which is well within the competency range. The majority report was also of the opinion that Billiot was competent to stand trial. However, the author of the majority opinion, Dr. A.G. Anderson, testified that he could not say whether Billiot would be able to understand and appreciate the Miranda warnings or statements made thereafter. There was also testimony that in July, 1979, and January, 1982, appellant was diagnosed as paranoid schizophrenic with paranoid delusions by at least four doctors.
At the conclusion of the hearing, the trial court found beyond a reasonable doubt that the statements were freely and voluntarily given.
The evidence on this record is that Billiot is of average intelligence and while it indicates that he was paranoid schizophrenic it also showed that he was competent to stand trial and that he was aware of the legal processes surrounding him and their consequences. There is no evidence that Billiot was overreached and we conclude that Billiot knowingly and intelligently, within the meaning of those two terms, waived his Miranda rights in making the statements complained of.

VII.

THE COURT ERRED IN ALLOWING DR. HENRY A. MAGGIO TO TESTIFY ON THE ISSUE OF INSANITY.
Appellant's first complaint under this assignment is that he was not notified of Dr. Maggio's testimony in accordance with Rule 4.08 of the Uniform Criminal Rules of Circuit Court Practice. During his case in chief, appellant put on a prima facie case of insanity and then the state introduced two expert witnesses in rebuttal. One of these witnesses was Dr. Maggio. Appellant objected to the testimony of Dr. Maggio and in overruling the objection the trial court made the following remarks:
BY THE COURT: As far as the rule is concerned, it has been complied with as *459 to Dr. Anderson and Dr. Maggio, who have already been in Court on this case, on the same question, and cross-examined by Defense counsel. I will overrule the objection.
Dr. Maggio had in fact testified at the October 18-20, 1982, suppression hearing on the issue of insanity. There the appellant was given ample opportunity to cross-examine the doctor and did so. It is difficult to imagine how, under these circumstances, Dr. Maggio's appearance as a witness at this stage of the proceedings surprised or prejudiced the appellant.
In Dycus v. State, 440 So.2d 246, 254 (Miss. 1983), we held that the testimony of unanounced witnesses was not error where appellant was not taken by undue surprise, was not denied any exculpatory evidence, and was not denied meaningful cross-examination. We further point out that Rule 4.08 does not mandate that the trial judge exclude the testimony of the witness under these circumstances and further even provides that the trial court may grant an exception to the requirements for good cause shown. The trial court correctly declined to grant the sanctions sought in this instance.
It is further argued that Dr. Maggio should not have been allowed to testify because he did not examine the defendant for the purpose of determining his state of mind at the time of the alleged crime; that his examination of the defendant was very limited in scope and time; that at the trial, he drastically changed his diagnosis from paranoid schizophrenia to schizophrenia form disorder; and that this psychiatrist routinely testified for the state.
As a general rule "the question as to whether or not the opinion of an expert is based on, and supported by, sufficient facts or evidence to sustain it, is a question of law for the court." Gulf Insurance Company v. Provine, 321 So.2d 311, 314 (Miss. 1975). We will not reverse on the question of determining the qualifications of an expert, absent a showing of abuse of discretion on the part of the trial judge. A similar issue as that raised by appellant here was addressed by the Court in Gray v. State, 351 So.2d 1342 (Miss. 1977), appealed after remand, 375 So.2d 994, cert. den. 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 847. In Gray, the psychiatric examination included a 20-minute interview by one doctor and three or four five-minute interviews conducted at the State Hospital at Whitfield. There too in reliance upon Hill v. State, supra, the appellant contended his psychiatric examination was insufficient. In response, this Court said,
Defendant relies on Hill v. State, 339 So.2d 1382 (Miss. 1976) as authority for his contention that his psychiatric examinations were insufficient. In Hill the first psychiatrist who examined Hill recommended further psychiatric examination. Because of that fact, we ordered further psychiatric examination of defendant in Hill. Unlike Hill, in this case, there was no recommendation for further psychiatric examination so no error was committed by the court when it did not order further psychiatric examination.
351 So.2d at 1348.
Dr. Maggio testified that he based his opinion on a 1-hour interview, Billiot's overall personality, and the fact that Billiot indicated that he fled the scene of the crime and that he contemplated turning himself in the next day. Dr. Maggio did not indicate that any further examination was required. We cannot say on this basis that the trial court abused his discretion on this point. Inasmuch as the remaining points of argument on this assignment go to the weight to be accorded to Dr. Maggio's testimony and not to its admissibility, we find the trial court did not commit error under this assignment.

VIII.

THE COURT ERRED IN PERMITTING THE INTRODUCTION OF FULL COLOR PHOTOGRAPHS OF THE VICTIM AND OF THE MURDER WEAPON AS NEITHER HAD ANY PROBATIVE VALUE BUT SERVED ONLY TO INFLAME AND PREJUDICE THE JURY.
The admissibility of photographs rests within the sound discretion of *460 the trial judge and, so long as the photographs have some evidentiary value, the trial judge will not have abused that discretion despite the gruesome nature of the photographs. Sharp v. State, 446 So.2d 1008 (Miss. 1984); Ashley v. State, 423 So.2d 1311, 1316 (Miss. 1982); Shearer v. State, 423 So.2d 824 (Miss. 1982); May v. State, 199 So.2d 635, 640 (Miss. 1967). Evidentiary value can be found in describing the circumstances of the killing and the corpus delicti, Williams v. State, 354 So.2d 266 (Miss. 1978), in describing the location of the body and the cause of death, Ashley v. State, supra, and in supplementing or adding clarity to the testimony of the witness, Hughes v. State, 401 So.2d 1100 (Miss. 1981).
When the photographs complained of were introduced into this record, the corpus delicti had not been conclusively established and the photographs had further evidentiary value in that they served to supplement and add clarity to the testimony of George Hebbler, among the first to discover the victims, as he related the circumstances of the killing and the location of the body. Therefore, appellant's eighth assignment of error is without merit.

IX.

THE COURT ERRED IN REFUSING DEFENDANT'S INSTRUCTIONS ON THE INSANITY ISSUE.
It is urged that in denying offered instructions D-3 and D-4 the trial court failed to grant any meaningful instruction on the issue of insanity and that the granted instruction S-2 was merely a "token instruction". The pertinent instructions are as follows:
JURY INSTRUCTION D-3
The Court instructs the Jury that if you believe from the evidence that James E. Billiot at the instant of the commission of the alleged crime was a sufferer from some mental disease, from any cause, which broke down in him the capacity to distinguish between right and wrong with reference to the act he did, then it is immaterial whether he was sane on other subjects or at other times.
JURY INSTRUCTION D-4
The Court instructs the jury that if the Defendant committed the alleged crime while acting under an irresistible or uncontrollable impulse; and that such impulse was the result of mental disease from which the Defendant was suffering at the time, and that the irresistible or uncontrollable impulse rose to such a degree as to overwhelm the reason, judgment and conscience of James E. Billiot, and that during this irresistible or uncontrollable impulse he could not distinguish between right and wrong, then it is your duty to find him not guity by reason of insanity.
JURY INSTRUCTION S-2
The Court instructs the Jury that mere queerness or unusual conduct is not alone any defense to crime, unless the mind of the party committing the crime, if any, is so affected, at the time of the commission thereof, that the power to distinguish between moral right and wrong is destroyed; and even if one be abnormal or queer, still, if he be able to appreciate the difference between moral right and wrong as to the particular act, if any, then the law holds him responsible for that act regardless of such abnormality or queerness, if any.
All instructions must be read together, however, and in that regard very pertinent to this issue is jury instruction C-01 which charged the jury as follows,
JURY INSTRUCTION C-01
The Court instructs the jury that, if the jury believe, from the evidence, that the defendant, at the time he killed Wallace J. Croll, Jr., was suffering from mental disease, and that this condition of mind was sufficient to break down in the mind of the defendant, at the time of the killing, the distinction between right and *461 wrong, it is immaterial whether he was totally of [sic] only partially insane on other subjects, and the verdict should be not guilty.
The insanity test utilized by this state is the M'Naghten right and wrong test. Laney v. State, 421 So.2d 1216 (Miss. 1982). Despite repeated rejections of tests providing for acquittal of those who act on an uncontrollable or irresistible impulse, see e.g. Laney v. State, supra, at 1218-19, we equally recognize that,
[T]he defense of irresistible or uncontrollable impulse was declared in that case [Smith v. State, 95 Miss. 786, 49 So. 945, 946] to be unavailable, unless the uncontrollable impulse sprang from a mental disease existing to such a high degree as to overwhelm the reason, judgment, and conscience, in which case, as the court adds, the accused would be unable to distinguish the right and wrong of a matter. 169 Miss. at 299, 153 So. at 381.
Herron v. State, 287 So.2d 759, 765 (Miss. 1974). See also, Eatman v. State, 169 Miss. 295, 299, 153 So. 381, 381 (1934); Smith v. State, 95 Miss. 786, 49 So. 945 (1909); Burr v. State, 237 Miss. 338, 342, 114 So.2d 764, 766 (1959).
Based on the requirements of Herron v. State, supra, and the cases cited above, the opinion testimony of at least three of the experts in this case was sufficient to adequately support the request of appellant for instruction D-4. The question remains, however, whether it was reversible error to refuse instruction D-4.
We find that it was not. The trial court "is not required to instruct the jury over and over on a principle of law, even though some variations are used in the different instructions." McWilliams v. State, 338 So.2d 804, 806 (Miss. 1976). Further, "all instructions should be read together, and if the jury is fully and fairly instructed by other instructions, the refusal of a similar instruction is not reversible error." Barr v. State, 359 So.2d 334, 338 (Miss. 1978).
Requested instruction D-3 is contained nearly verbatim in jury instruction C-01. As to requested instruction D-4, this Court said long ago,
If the impulse meant is the direct result of such mental disease as destroys the perception of right and wrong, this is only a reaffirmation of the doctrine announced in several preceding charges, and it derives no additional strength from the prefix of the word "uncontrollable."
Cunningham v. State, 56 Miss. 269, 278-79 (1879).
Requested jury instruction D-4 was merely a "reaffirmation" of jury instruction C-01. Reading the jury instructions as a whole, we cannot say that the insanity test adopted by Mississippi was not fully and fairly placed before the jury. The ninth assignment of error is without merit.

X.

THE COURT ERRED IN DENYING APPELLANT'S INSTRUCTION D-9.
Appellant contends that it was error to refuse instruction D-9 which contains language as to the state's burden of proof in a circumstantial evidence case. The trial judge refused the instruction, saying it was contained in jury instruction S-1.
A circumstantial evidence instruction is available when the state's case is based wholly upon circumstantial evidence and the state is required to prove the appellant guilty not only beyond a reasonable doubt but also to the exclusion of every reasonable hypothesis consistent with innocence. Flemmons v. State, 419 So.2d 1034, 1036 (Miss. 1982); and Whitlock v. State, 419 So.2d 200, 204 (Miss. 1982).
The state's case here is not wholly circumstantial; it was based on both direct and circumstantial evidence. Moreover, in part the case was based on appellant's own statements that the "devil" killed these people and committed the robbery while the appellant stood behind him. It was a reasonable inference that the devil *462 did not do these acts but that the appellant did. Flemmons v. State, supra, at 1034. There is an even more compelling reason not to place the trial court in error on instruction D-9. In the instruction offered and refused, the language used by the appellant was "to a moral certainty". That is not the burden of proof in a circumstantial evidence case. Whitlock v. State, supra. Appellant failed to request proper circumstantial evidence instructions. Having failed to request them, he cannot now place the trial judge in error on this issue. Samuels v. State, 371 So.2d 394 (Miss. 1979). Assignment number 10 is without merit.

XI.

THE COURT FAILED TO GIVE CLEAR INSTRUCTIONS AS TO THE STATE'S BURDEN OF PROOF OF THE UNDERLYING FELONY AND SUCH ERROR WAS FATAL TO THE VERDICT.
Appellant argues that the trial court failed to give clear instructions as to the state's burden of proof of the underlying felony. Appellant contends that the court erroneously reworded instruction D-13 to exclude circumstantial evidence language. He also contends that the instruction, as reworded, was not clear. We have already disposed of the appellant's argument as it concerns circumstantial evidence. Instruction D-13 in its original form does not appear in this record. Furthermore, the record does not reveal that the appellant made an objection to D-13 as it was given. Appellant has, therefore, waived his objection to this instruction on this issue. Bieller v. State, 275 So.2d 97, at 99 (Miss. 1973). See also, Supreme Court Rule 42. It is argued that instruction D-13, appellant's own instruction minus the circumstantial evidence language, was confusing because of the jury's question during deliberations. The jury sent the following question to the trial judge:
"Does a person have to plan to commit a robbery, or be in the process of robbing a person when he kills them, for it to be capital murder? Does it matter which happens first, the robbery or the murder?"
The trial judge made counsel aware of the question put to him by the jury and dictated the following response to the jury:
"In reply to your inquiry, please be advised that the law provides that the violence of putting in fear, which is an essential element of the crime of robbery, must be committed prior to, or contemporaneously or concomitant with the taking of property. Concomitant is defined as something that accompanies or is collaterally connected with something else."
Both sides were offered an opportunity to object to the additional instruction granted by the trial judge and both sides offered no objection. If we assume that jury instruction D-13 was confusing, the underlying felony was adequately explained in instruction S-1, which tracked the felony murder statute, Mississippi Code Annotated § 97-3-19(2)(e) (Supp. 1983). We, therefore, conclude that the jury was fully and fairly instructed as to the applicable law and the tenth and eleventh assignments of error are without merit.

XII.

THE COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE AND IN OVERRULING APPELLANT'S REQUEST FOR A PEREMPTORY INSTRUCTION AT THE CLOSE OF THE TRIAL.

XIV.

VERDICT OF THE JURY FINDING APPELLANT GUILTY OF CAPITAL MURDER WAS AGAINST THE OVERWHELMING WEIGHT OF CREDIBLE EVIDENCE.
The effect of both of these assignments of error is that the verdict of the jury finding Billiot guilty of capital murder was against the overwhelming weight of the evidence because the state failed to *463 prove the underlying felony of robbery. This position is disposed of by our application of the principles urged in Voyles v. State, 362 So.2d 1236 (Miss. 1978) and Wheat v. State, 420 So.2d 229 (Miss. 1982). In Voyles v. State, supra, we held,
As stated above, the jury was fully instructed that it was necessary for them to find that appellant had the intent to rob when the act of killing was done. As we have heretofore seen, this intent may be shown by the acts of the person involved as well as the circumstances surrounding such actions. It is not necessary for that intent to be express and the subsequent acts were an important factor for the jury to consider.
362 So.2d at 1243.
The Voyles court then found that the defendant's possession of the deceased's car was sufficient for the jury to find the killing to be done while engaged in the commission of a robbery. In Wheat v. State, supra, the appellant was found in possession of the deceased's car, along with its contents, and argued on appeal that there was no proof of the crime of robbery in connection with the alleged murder. Quoting Voyles v. State, supra, and Shanklin v. State, 290 So.2d 625 (Miss. 1974), the Wheat Court held that the intent to do an act or crime is a question of fact to be determined by the jury from the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent. As this is an issue for the jury and the jury found adversely to the appellant, the Court in Wheat found no merit in the appellant's argument.
Billiot was seen driving away from the scene in the car owned by the deceased Croll. Billiot also admitted he took $60.00 from Wallace Croll's wallet. The issue of intent was a question of fact for the jury. Having been properly instructed on the elements of robbery and capital murder, taking the evidence as a whole, it was reasonable for the jury to conclude that Billiot committed the murder while engaged in the crime of robbery.
Under this assignment the appellant argues that, under Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), the jury was bound to accept his statement that he took the money and the car to cover up for the "devil's" actions. The Weathersby rule has no application here. Under Weathersby v. State, supra, the appellant's explanation must be "reasonable". Null v. State, 311 So.2d 654, 655 (Miss. 1975). Certainly Billiot's explanation here is not reasonable.

XIII.

THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
Mississippi has long adhered to the M'Naughten test of insanity. Laney v. State, 421 So.2d 1216 (Miss. 1982). The question becomes: Did Billiot, at the time he committed the act, realize and appreciate the nature and quality thereof, did he have the ability to distinguish right and wrong?
The defendant is presumed sane until a reasonable doubt of his sanity is created. When such a doubt arises, the burden is then placed upon the state to prove, beyond a reasonable doubt, the defendant's sanity. King v. State, 374 So.2d 808, 811 (Miss. 1979), cert. den. 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602. The ultimate issue is to be determined by the jury. Brady v. State, 425 So.2d 1347, 1349 (Miss. 1983). In arriving at its decision, the jury is not bound to accept the conclusions of the experts, but can rely on lay testimony as well as its own common sense. Smith v. State, 245 So.2d 583, 585 (Miss. 1971). Finally, the jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict. Harrigill v. State, 381 So.2d 619, 623 (Miss. 1980); Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980); and Gangloff v. State, 242 Miss. 168, 134 So.2d 481 (1961). The testimony, both that of the experts and *464 that of the lay witnesses, is conflicting. All of the evidence was properly placed before a properly instructed jury. Based on the principles set out above, we cannot say that this record does not include substantial and believable evidence supporting the verdict of the jury. Therefore, the thirteenth assignment of error is without merit.

XV.

THE IMPOSITION OF THE DEATH PENALTY IS CRUEL AND UNUSUAL PUNISHMENT PER SE.
The argument was not made in the trial court and it is argued here for the first time that execution by lethal gas is cruel and unusual punishment in violation of the eighth amendment to the United States Constitution. Ordinarily this argument would be procedurally barred, but as it is raised under our theory of heightened review we will discuss it.
Execution by lethal gas has been held not cruel and unusual both by this Court and the Fifth Circuit Court of Appeals. In Coleman v. State, 378 So.2d 640 (Miss. 1979), we stated that,
The constitutionality of the death penalty as imposed under Section 99-19-101 et seq. has been firmly established. Proffit v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Washington v. State, 361 So.2d 61 (Miss. 1978).
Id. at 647.
In Edwards v. State, 441 So.2d 84 (Miss. 1983), we again stated:
The appellant's third contention is that the death penalty constitutes a per se constitutional violation under any circumstances. This contention is obviously without merit, and needs no further comment. Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
441 So.2d at 90.
And finally, the Fifth Circuit Court of Appeals addressed the constitutionality of Mississippi's method of execution in Gray v. Lucas, 710 F.2d 1048 (5th Cir.1983). There the Fifth Circuit upheld as constitutional Mississippi's method of execution by lethal gas. The assignment is without merit.

XVI.

SECTION 99-19-101(5)(h) IS UNCONSTITUTIONALLY VAGUE, AMBIGUOUS AND OVERBROAD IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND OF SECTION FOURTEEN OF THE MISSISSIPPI CONSTITUTION AND OF THE PROHIBITION AGAINST CRUEL AND INHUMAN PUNISHMENT OF THE EIGHTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND OF SECTION TWENTY-EIGHT OF THE MISSISSIPPI CONSTITUTION.
The language of Section 99-19-101(5)(h) (Supp. 1983), with which appellant takes issue provides as an aggravating circumstance that the murder was committed in an "especially heinous, atrocious, or cruel" manner. A similar provision was upheld by the United States Supreme Court in Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).
In reviewing our construction of the statute, we find that in Coleman v. State, 378 So.2d 640 (Miss. 1979), we quoted Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), and stated that what is intended by the words "especially heinous, atrocious or cruel", "are those capital crimes where the actual commission of the felony was accompanied by such additional facts as to set the crime apart from the norm of capital felonies  the consciencelessness or pitiless crime which is unnecessarily tortuous to the victim." 378 So.2d at 648 [emphasis in original]. Also, in Edwards v. State, supra, the Court, in determining whether the *465 statutory requirements of § 99-19-101(5)(h) had been met, found that the "testimony was certainly sufficient for the jury to find that the infliction of the wounds was `unnecessarily tortuous' and was `pitiless.'" Id. at p. 92.
The Fifth Circuit Court of Appeals was squarely faced with this issue in the first Gray appeal, Gray v. Lucas, 677 F.2d 1086 (5th Cir.1982). That Court upheld § 99-19-101(5)(h), stating that "Mississippi has consistently applied a limiting construction to this factor." Id. As we have given the statute a limited construction in its application, the statute's use as an aggravating factor is not unconstitutional.

XVII.

SECTION 99-19-101(5)(d) IS UNCONSTITUTIONAL AS IT VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND OF SECTION FOURTEEN OF THE MISSISSIPPI CONSTITUTION, AND THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND OF SECTION TWENTY-TWO OF THE MISSISSIPPI CONSTITUTION, AND THE PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT OF THE EIGHTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND OF SECTION TWENTY-EIGHT OF THE MISSISSIPPI CONSTITUTION
The thrust of this argument is that to allow the jury to consider as an aggravating circumstance that the murder was committed in the course of the commission of a felony, in effect, permits the jury to twice condemn appellant for the same offense. Billiot failed to raise this argument below and is thus barred from arguing it here for the first time. Colburn v. State, 431 So.2d 1111, 1114 (Miss. 1983). See also, Engle v. Isaac, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574, 71 L.Ed.2d 783, 804 (1982), in the discussion of appellant's third assignment of error. But, proceeding to the merits of this contention, we find the argument has been presented to us on two previous occasions and rejected both times. Leatherwood v. State, 435 So.2d 645, 650 (Miss. 1983); Tokman v. State, 435 So.2d 664, 668 (Miss. 1983). Consequently, the seventeenth assignment of error is without merit.

XVIII.

SENTENCING INSTRUCTION GIVEN BY THE COURT WAS IMPROPER BY DIRECTING THE JURY TO FIND AS AN AGGRAVATING CIRCUMSTANCE THAT THE MURDER WAS ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL.
Citing Edwards v. State, supra, Billiot contends that there was no evidence of physical or emotional torture to his victim and, therefore, this instruction was improper. To the contrary, the record indicates that the evidence more than adequately supported the instruction. From the record it will be found that the head of the deceased was bashed in and yet when he was discovered he was still alive and gasping for air. Near the body was found an 8-pound maul with blood on it. The pathologist's testimony indicated that death was caused by at least two blows to the head with a blunt instrument and possibly three or more. That is sufficient evidence from which a jury could find that the infliction of the wounds was "unnecessarily tortuous" and was "pitiless". The assignment is without merit.

XIX.

SENTENCING INSTRUCTION GIVEN BY THE COURT WAS MISLEADING IN THAT THE JURY BELIEVED IT MUST IMPOSE DEATH IF ANY MITIGATING CIRCUMSTANCES FAILED TO OUTWEIGH THE AGGRAVATING CIRCUMSTANCES.
Appellant urges that the jury should have been instructed that they had *466 the discretion not to impose the death penalty regardless of the evidence. It should be noted that the appellant neither offered any instructions nor objected to the one given.
This same argument was presented to us in Hill v. State, 432 So.2d 427 (Miss. 1983), where the Court noted that the jury had found certain aggravating circumstances to outweigh the mitigating circumstances, and in rejecting Hill's arguments stated,
The jury in this case, just as the jury in Jordan, unanimously found that the aggravating circumstances outweighed the mitigating circumstances and that the death penalty should be imposed. Their verdict is set out in language which shows that they had come to the conclusion that the aggravating circumstances justified the death penalty's imposition and not that they had no other choice but to impose it. Based upon our holding in Jordan, we find no reversible error in the lower court's refusal to grant instruction D-2.
Id. at 442. A similar argument was likewise rejected in King v. State, 421 So.2d 1009, 1018 (Miss. 1982).
In the present case the jury was specifically instructed that,
To return the death penalty, you must find that any aggravating circumstances  those which tend to warrant the death penalty  outweigh the mitigating circumstances  those which warrant the less severe penalty.
Upon arriving at its decision, the jury here, as in Hill v. State, supra, and King v. State, supra, found aggravating circumstances to outweigh the mitigating circumstances. The jury's verdict was as follows:
We, the jury, unanimously find that the aggravating circumstances of (1) capital murder was committed while the Defendant, James Billiot, was engaged in the commission of the crime of robbery.
(2) James Billiot committed the capital murder in an especially heinous, atrocious and cruel manner, sufficient to impose the death penalty, and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances, and we unanimously find that the Defendant should suffer death.
This jury came to the conclusion that the aggravating circumstances justified the death penalty and they did not conclude that they had no other choice but to impose it. The assignment is without merit.

XX.

THE EVIDENCE DOES NOT SUPPORT THE JURY'S FINDING OF A STATUTORY AGGRAVATING CIRCUMSTANCE WHICH OUTWEIGHED ANY MITIGATING CIRCUMSTANCES.
The weighing of aggravating and mitigating circumstances is a function of the jury. Gray v. Lucas, 685 F.2d 139, 149 (5th Cir.1982). We also have a statutorily mandated duty to review in this type case. See Mississippi Code Annotated § 99-19-105 (Supp. 1983). One such duty is to consider punishment and remand for modification to life imprisonment if such is appropriate. Applying Gray v. Lucas, supra, and as the aggravating circumstances do outweigh the mitigating circumstances in this case, the assignment is without merit. The factors were properly weighed by the jury and there was substantial evidence upon which the jury found that statutory aggravating circumstances outweighed any mitigating circumstance.
We have examined the sentencing phase in the manner required by Mississippi Code Annotated § 99-19-105 (Supp. 1983). This careful examination reveals that no influence of passion, prejudice, or any other arbitrary factor was involved in the jury's imposition of the death sentence. The evidence supports the jury's finding, beyond a reasonable doubt, of the aggravating circumstances that appellant Billiot killed and murdered Wallace J. Croll, Jr., while appellant was engaged in the commission of the crime of robbery, and that appellant committed the crime in an especially heinous, atrocious and cruel manner.
*467 Finally, we have closely examined the record in the instant case and unequivocably find that Billiot's murder of Croll warranted the death penalty. A comparison of this case with the cases decided after Jackson v. State, 337 So.2d 1242 (Miss. 1976), in which the death penalty has been imposed and upheld reveals that such penalty is neither wanton, freakish, excessive, nor disproportionate to the sentences imposed in these cases. (See Appendix "A"). His execution would be consistent and even-handed with all the post-Jackson death penalty cases previously affirmed by us.
As mandated by Mississippi Code Annotated § 99-19-105 (Supp. 1983), we have reviewed the record of all proceedings had in this cause including all motions, pleadings, requests and jury instructions. Jury instructions in all respects gave appropriate guidance to the jurors during the guilt and sentencing phases. Defense counsel, as reflected by the record, ably, vigorously and adequately represented the defendant at all stages and filed numerous motions and objections throughout the trial. A fair trial was accorded Billiot, and the verdict and sentence were based upon the evidence which proved the charge against him beyond any reasonable doubt. No reversible error has been pointed out, and our examination of the entire record fails to reveal such error.
AFFIRMANCE IS ORDERED, AND WEDNESDAY, THE 18th DAY OF JULY, 1984, IS FIXED AS THE DATE ON WHICH THE DEATH SENTENCE SHALL BE EXECUTED AS PROVIDED BY LAW.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and BOWLING, DAN M. LEE and PRATHER, JJ., concur.
HAWKINS and ROBERTSON, JJ., not participating.

APPENDIX A
DEATH PENALTY CASES AFFIRMED BY THIS COURT:

Neal v. State, 451 So.2d 743 (Miss. 1984).

Booker v. State, 449 So.2d 209 (1984).

Wilcher v. State, 448 So.2d 927 (1984).

Caldwell v. State, 443 So.2d 806 (Miss. 1983).

Irving v. State, 441 So.2d 846 (Miss. 1983), and 361 So.2d 1360 (Miss. 1978).

Tokman v. State, 435 So.2d 664 (Miss. 1983).

Leatherwood v. State, 435 So.2d 645 (Miss. 1983).

Hill v. State, 432 So.2d 427 (Miss. 1983).

Pruett v. State, 431 So.2d 1101 (Miss. 1983).

Gilliard v. State, 428 So.2d 576 (Miss. 1983).

Evans v. State, 422 So.2d 737 (Miss. 1982).

King v. State, 421 So.2d 1009 (Miss. 1982).

Wheat v. State, 420 So.2d 229 (Miss. 1982).

Smith v. State, 419 So.2d 563 (Miss. 1982).

Edwards v. State, 413 So.2d 1007 (Miss. 1982).

Johnson v. State, 416 So.2d 383 (Miss. 1982).

Bullock v. State, 391 So.2d 601 (Miss. 1980).

Reddix v. State, 381 So.2d 999 (Miss. 1980).

Jones v. State, 381 So.2d 983 (Miss. 1980).

Culberson v. State, 379 So.2d 499 (Miss. 1979).

Gray v. State, 375 So.2d 994 (Miss. 1979).

Jordan v. State, 365 So.2d 1198 (Miss. 1978).

Voyles v. State, 362 So.2d 1236 (Miss. 1978).

Washington v. State, 361 So.2d 61 (Miss. 1978).

Bell v. State, 360 So.2d 1206 (Miss. 1978).
*468 DEATH PENALTY CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT:

Dycus v. State, 440 So.2d 246 (Miss. 1983).

Edwards v. State, 441 So.2d 84 (Miss. 1983).

Coleman v. State, 378 So.2d 640 (Miss. 1979).
DEATH PENALTY CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY:

Cannaday v. State, 455 So.2d 713 (1984).

Williams v. State, 445 So.2d 798 (Miss. 1984).

Wiley v. State, 449 So.2d 756 (1984).