971 So.2d 645 (2007)
Murry WEEKS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00610-COA.
Court of Appeals of Mississippi.
December 11, 2007.
Murry Weeks, Appellant, pro se.
W.S. Stuckey, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before LEE, P.J., IRVING and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. Murry Weeks was convicted of bringing contraband into a jail facility and was sentenced to seven years in the custody of the Mississippi Department of Corrections by the Leflore County Circuit Court. Weeks's trial counsel filed a brief pursuant to Lindsey v. State, 939 So.2d 743 (Miss.2005), in which he contends that there was no error below.[1] Weeks then filed a pro se supplemental brief.
¶ 2. We find no error; therefore, we affirm Weeks's conviction and sentence.

*646 FACTS
¶ 3. Weeks was an inmate at Delta Correctional Facility (DCF) in Greenwood, Mississippi. He had earned trusty status and was allowed to leave the facility to work garbage detail. On April 29, 2005, Weeks and four other trusties returned to DCF after completing their work assignment for the day. Upon their return to the jail, each trusty was individually searched.[2]
¶ 4. Tiawan Thomas was employed at DCF as a unit manager on the day of the incident. She testified that upon Weeks's return to the facility Weeks took off his jacket and laid it on a chair in the booking area. According to Thomas, this aroused her suspicions because Weeks was the only inmate who removed his jacket. Senior Corrections Officer Kevin Perkins conducted a search of Weeks and discovered a bag containing catfish and hushpuppies, a bag of Cheetos, and a twenty-dollar bill concealed in Weeks's buttocks.[3]
¶ 5. After the search, Weeks proceeded to his cell without claiming his jacket. Thomas testified that she asked Weeks, "[A]ren't you leaving your jacket?" Weeks responded affirmatively and picked up the jacket. Thomas testified that she then said to Weeks, "Let me search the jacket because we haven't searched it." During the search, Thomas found a brown paper bag wrapped in duct tape in the sleeve of the jacket. The paper bag contained two small bags of what was later identified as marijuana. Sergeant Andrew Cates, with the Leflore County Sheriff's Department, testified that he gathered the evidence and that Ken Spencer, chief investigator for the Leflore County Sheriff's Department, sent the marijuana to the Mississippi Crime Lab for testing.
¶ 6. On cross-examination, Thomas testified that there is often no way to distinguish one inmate's jacket from another because most inmates do not put their names in the jackets and the facility does not have a procedure which links a jacket to a particular inmate.
¶ 7. Weeks took the stand in his own defense and testified that on April 29 he and the other trusties finished working early, so they went to a store to purchase snacks. Weeks stated that it was not unusual for them to bring food back to the facility on Fridays and admitted bringing the catfish, hushpuppies, and Cheetos into the jail on April 29.
¶ 8. Weeks stated that while on work detail, trusties wear clothing that identifies them as inmates of Leflore County. According to Weeks, there was a problem with the water at the jail, which prevented inmates from washing their clothing at the jail. Weeks testified that Thomas instructed him to bring clothing that had accumulated at the solid waste department to the jail so that it could be washed when the problem with the water was resolved.[4] Weeks stated that on the day of the incident, he was merely complying with Thomas's request. He testified that he brought "a whole pile" of clothing, including jackets, shirts, and pants to the jail.
¶ 9. Weeks testified that he returned to the jail with his jacket and a jacket that he had retrieved from a locker that was located next to his. He stated that Matthew *647 Ingram occupied the locker next to his before Ingram was removed from the trusty program after testing positive for drugs. Further, Weeks stated that he wore his jacket into the room where the search was conducted and that his jacket was searched at that time. He also insisted that the twenty-dollar bill was not recovered from his buttocks, but that he gave it to Perkins immediately before the search began.[5] Weeks testified that he had been escorted to his cell when Thomas came in and told him that he had left his jacket in the booking area. Weeks stated that he agreed to get the jacket but that he told Thomas that he could not have left his jacket in the booking area because it was already in his cell.
¶ 10. Weeks's testimony on cross-examination was inconsistent with his direct testimony. On cross-examination, Weeks testified that he retrieved a jacket out of a locker that he had once shared with Milton Stokes and that it was that jacket that he had left in the chair in the booking area. Weeks further testified that Stokes had also been removed from the trusty program after failing a drug test.
¶ 11. Sydney Peacock, a Leflore County employee in charge of the solid waste department, testified on Weeks's behalf. Peacock corroborated Weeks's testimony that on occasion trusties would take jackets and other clothing that accumulated in the solid waste department back to the jail. However, Peacock stated that an inmate named Quincy Williams, and not Weeks, was responsible for taking the extra clothing back to the jail. Peacock also confirmed that Stokes was terminated after he tested positive for drugs.

ANALYSIS AND DISCUSSION OF THE ISSUES
¶ 12. Pursuant to Lindsey, 939 So.2d at 746(¶ 12) (quoting Turner v. State, 818 So.2d 1186, 1189 (Miss.2001)), it is the responsibility of appellate counsel to (1) determine that the only claims left for appeal are frivolous, (2) file a brief indicating that he has conducted a thorough review of the record and has found nothing to support an appeal, and (3) "advise [his] client of his right to file a pro se supplemental brief." The appellate court is then required to conduct an "independent review of the record" to determine if there are any arguable issues and, if any arguable issue is found, require counsel to file a supplemental brief on the issue. Id.
¶ 13. In this case, Weeks's attorney filed a brief indicating that he had thoroughly scoured the record and found no arguable issues to support Weeks's appeal. In his brief, Weeks's attorney asserts that he has examined: (1) the reason and circumstances surrounding Weeks's arrest, (2) any possible violations regarding Weeks's right to counsel, (3) the trial transcript, (4) the rulings of the trial court, (5) any possible prosecutorial misconduct, (6) the jury instructions, (7) the exhibits, and (8) any possible misapplication of the law in sentencing. The attorney asserts that he considered all of these possible avenues for appeal and found no non-frivolous issue for appeal.
¶ 14. As stated, Weeks filed a supplemental brief. In his brief, which is a two-page memorandum to the Clerk of this Court, Weeks argues that he was denied effective assistance of counsel and also appears to challenge the sufficiency of the evidence used to convict him.
¶ 15. After a thorough review of the record, we likewise have found no arguable, non-frivolous issue. However, for the sake of thoroughness, we briefly address the two issues raised by Weeks.
*648 Ineffective Assistance of Counsel
¶ 16. Weeks seems to suggest that his attorney was ineffective for failing to ask certain questions, although he does not frame this issue as a claim of ineffective assistance of counsel. Nevertheless, we will treat it as such. In order to succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficiency prejudiced his case. Burns v. State, 813 So.2d 668, 673(¶ 14) (Miss. 2001) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Weeks fails to assert any authority to support his claim that his attorney's actions or inactions rise to the level of ineffective assistance. Additionally, Weeks does not enunciate the questions that he claims his trial counsel was ineffective for failing to ask. Therefore, we find no merit to this issue.
Sufficiency of the Evidence
¶ 17. In determining whether evidence is sufficient to sustain a conviction:
the critical inquiry is whether the evidence shows "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction."
Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). On the other hand, if the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 18. In this issue, Weeks argues that his conviction must be reversed and rendered because the record lacks proof that the jacket in which the marijuana was found belonged to him and not Stokes. Weeks contends that the jacket belonged to Stokes, who had been terminated from his position as a trusty after testing positive for drug use. Further, Weeks contends that he brought Stokes's jacket to the jail from the solid waste department per Thomas's request. As such, Weeks argues that he should not be charged with bringing marijuana into the facility because he simply complied with Thomas's request. Weeks testified that it was commonplace for trusties to bring clothing from the solid waste department to the jail and that Thomas asked him to do so on the day the marijuana was discovered. We note that Weeks's testimony was the complete opposite of the testimony of Thomas, Perkins, and Cates, all of whom denied any knowledge of such a policy. Moreover, Weeks's testimony on cross-examination contradicted his direct testimony, as it was not until cross-examination that Weeks mentioned taking a jacket from a locker that he once shared with Stokes. On direct, Weeks had stated that the jacket had come from Ingram's locker. Further, Thomas testified that the marijuana was found in the sleeve of the jacket that Weeks was wearing when he returned to the jail.
¶ 19. The jury considered all of the testimony presented at trial and concluded that Weeks was guilty as charged. "[T]he jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." Billiot v. State, 454 So.2d 445, 463 (Miss.1984) (citing Harrigill v. State, 381 *649 So.2d 619, 623 (Miss.1980)). This issue lacks merit.
¶ 20. THE JUDGMENT OF THE LEFLORE COUNTY CIRCUIT COURT OF CONVICTION OF INTRODUCTION OF CONTRABAND INTO A JAIL FACILITY AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LEFLORE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., concur.
NOTES
[1] In Lindsey, the Mississippi Supreme Court prescribes the procedure to be followed when a defendant's attorney does not find any arguable issues supporting an appeal.
[2] It is standard procedure for inmates who leave the facility to be subjected to an individual full-body search before they are allowed to return to their cells.
[3] Perkins also testified at trial and relayed the same sequence of events as Thomas.
[4] Thomas, Perkins, and Cates denied having any knowledge of a policy which permits trusties to bring extra clothing that has been left in the solid waste department back to the jail.
[5] In his brief, Weeks states that the twenty-dollar bill was recovered from his sock.